[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 5, 2010
JOHN LEY
CLERK

_____

No. 08-11760

_____

D. C. Docket No. 06-00166-CR-ORL-19JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREA MILLS,

Defendant-Appellant.

_____

No. 08-11797

_____

D. C. Docket No. 06-00180-CR-ORL-31-DABS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSHUA L. BROWN,

_____

Appeals from the United States District Court
for the Middle District of Florida
_____
(August 5, 2010)

Before TJOFLAT, EDMONDSON and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

In separate appeals, which we have consolidated because they raise the same issue, Andrea Mills and Joshua Brown (collectively "Defendants") appeal the denial of their motions for reduction of sentence under 18 U.S.C. § 3582(c)(2).[1] Finding that in both cases, Defendants' statutory mandatory minimum sentences left the district courts without jurisdiction to hear their sentence reduction motions, we affirm the district courts' judgments.

We begin with a brief recitation of Mills's and Brown's respective circumstances.

I.

---

[1] Different Middle District of Florida judges sentenced Mills and Brown and denied their § 3582(c)(2) motions. Although they raise the same legal issue here, their cases are factually unrelated. We originally consolidated their appeals only for oral argument, but because we find no significant distinction between the arguments they present, we dispose of their appeals in one opinion. See, e.g., United States v. Moore, 541 F.3d 1323, 1325 (11th Cir. 2008) (consolidating five defendants' appeals from denials of sentence reduction motions for unrelated crack cocaine offenses); see also Fed. R. App. P. 3(b)(2).

A.

Mills and a codefendant were caught in a sting operation selling cocaine base ("crack cocaine") to a confidential source and indicted for conspiracy to possess with intent to distribute 50 or more grams of crack cocaine and possession with intent to distribute crack cocaine. See 21 U.S.C. §§ 841(b)(1)(A)(iii), 846. Mills pled guilty. The district court's probation office prepared a Presentence Investigation Report ("PSI") attributing Mills with a total of 82.6 grams of crack cocaine, which, under the version of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") then in effect, gave Mills a base offense level of 32. U.S.S.G. § 2D1.1(c)(4) (2006).[2] Mills's base offense level was then reduced by two

_____

[2] When referring to the Guidelines provisions under which the calculations in Defendants' PSIs were made, we use the 2006 version of the Sentencing Guidelines manual, which was in effect at the time Defendants were sentenced. See U.S.S.G. § 1B1.11(a) (2006) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). Defendants base their arguments for sentence reduction largely on U.S.S.G. § 1B1.10(b)(2) (2008). Section 1B1.10 was altered by Amendment 712 to the Guidelines manual, which became effective March 3, 2008; § 1B1.10(b)(2) did not exist in the 2006 Guidelines manual under which Defendants were sentenced. See U.S.S.G. App. C, amend. 712 (Supp. Mar. 3, 2008) (amending § 1B1.10).

Ordinarily, a court must use only one version of the Guidelines under the "one book rule," and must apply that version in its entirety. U.S.S.G. § 1B1.11(b)(2) (2006); United States v. Bailey, 123 F.3d 1381, 1403–04 (11th Cir. 1997). An exception provides, however, that a court "shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." U.S.S.G. § 1B1.11(b)(2) (2006). We have not articulated a specific test to determine whether an amendment is clarifying or substantive, but the Sixth Circuit has: "[H]ow the Sentencing Commission characterized the amendment; whether the amendment changes the language of the guideline itself or changes only the commentary for the guideline; and whether the amendment resolves an ambiguity in the original wording of the guideline." United States v. Monus, 356 F.3d 714, 718 (6th Cir. 2004) (quoting United States v. Hartz, 296 F.3d 595, 599 (7th Cir. 2002)) (footnotes omitted).

levels because she received a mitigating role adjustment for her participation in the

conspiracy.  U.S.S.G. § 2D1.1(a)(3) (2006).[3]  Three levels were then deducted for

We are unable to find a published case, in this or any other federal circuit, that has held whether Amendment 712 effected a substantive or a clarifying change to § 1B1.10.  The language accompanying Amendment 712, however, implies that the Sentencing Commission intended it to be clarifying.  Amendment 712 was adopted to guide courts in preparing for the onslaught of § 3582(c)(2) motions expected after Amendment 713 (which took effect the same day as Amendment 712) retroactively applied Amendment 706, reducing base offense levels for crack cocaine offenses.  See U.S.S.G. App. C, amend. 713 (Supp. Mar. 3, 2008) ("[T]he Commission's analysis of cases potentially eligible for retroactive application of Amendment 706 . . . indicates that the number of cases potentially involved is substantial.").  Amendment 712 explains that it makes modifications to § 1B1.10 "to clarify when, and to what extent, a reduction in the defendant's term of imprisonment is consistent with the policy statement."  Id. amend. 712.  Further, subsection (b)(2) "provides further clarification that the court shall not reduce the defendant's term of imprisonment to a term that is less than the minimum of the amended guideline range," except that a proportionate reduction may be appropriate if the defendant originally received a below-Guidelines sentence.  Id.  The amendment "clarifies that in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served" and adds examples "illustrating the limitations on the extent to which a court may reduce a defendant's term of imprisonment."  Id.  Lastly, the amendment "modifies Application Note 1 to delineate more clearly factors for consideration by the court in determining whether, and to what extent, a reduction in the defendant's term of imprisonment is warranted," and "makes conforming changes" to § 1B1.10's application notes and background commentary.  Id.

These examples lead us to have the idea, in light of Monus, that Amendment 712 is more of a clarifying, rather than substantive, amendment.  Because we affirm the district courts' judgments on other grounds, we assume, for this case only, that Amendment 712 is a clarifying amendment and that Defendants' argument, based as it is on U.S.S.G. § 1B1.10(b)(2) (2008), does not violate the one book rule of § 1B1.11.

[3]  This provision reads, in relevant part:

> **§2D1.1.**    **Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy**
>
> (a)    Base Offense Level (Apply the greatest):
>
> . . . .
>
> (3) the offense level specified in the Drug Quantity Table set forth in subsection

Mills's role-in-the-offense adjustment, U.S.S.G. § 3B1.2(a)&(b) (2006),[4] and three further levels were deducted for her acceptance of responsibility, U.S.S.G. § 3E1.1(a)&(b) (2006), resulting in a total offense level of 24.

Mills's prior criminal activity resulted in a criminal history category of III. Based on her total offense level and criminal history category, the PSI recommended a sentencing range of 63 to 78 months' imprisonment. Because Mills was subject to a mandatory minimum sentence of 10 years for her violation of § 841(b)(1)(A)(iii), however, her effective (or "applicable") Guidelines sentencing range became a fixed term of imprisonment, 120 months. See U.S.S.G. § 5G1.1(b) (2006) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.").

At sentencing, the Government moved for, and the district court granted, a departure below the statutory minimum due to Mills's substantial assistance to the Government. See 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1 (2006). The court

(c), except that if (A) the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (i) level **32**, decrease by **2** levels; (ii) level **34** or level **36**, decrease by **3** levels; or (iii) level **38**, decrease by **4** levels.

U.S.S.G. § 2D1.1 (2006).

[4] The PSI recommended, and the district judge found, that Mills was between a minimal and minor participant in the conspiracy. Mills, therefore, received a three-level adjustment for her role in the offense. U.S.S.G. § 3B1.2(a)–(b) (2006).

departed downward by two levels to a total offense level of 22. Mills's new sentencing range became 51 to 63 months' imprisonment, and the district court sentenced her to 51 months, followed by five years of supervised release.

B.

Brown, like Mills, was caught in a sting operation in which he and a codefendant sold crack cocaine to a confidential informant.[5] They were indicted for one count of conspiracy to possess with intent to distribute 50 or more grams of crack cocaine, 21 U.S.C. § 846, and one count of knowingly and intentionally aiding and abetting the possession with intent to distribute and distribution of 50 grams or more of crack cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. Brown pled guilty to the second count, and the Government dismissed the first count.

Brown's PSI attributed him with 120.2 grams of crack, resulting in a base offense level of 32 under the crack cocaine Guideline then in effect, U.S.S.G. § 2D1.1(c)(4) (2006). Like Mills, Brown received a mitigating role reduction for his participation in the conspiracy, though unlike Mills, he received only a two-level reduction as a minor participant. Id. § 3B1.2(b). This reduced Brown's base offense level by two levels. Id. § 2D1.1(a)(3). Two levels were then deducted for

_____

[5] Neither Mills's nor Brown's codefendants are involved in this appeal.

Brown's minor role reduction, and three further levels were deducted for Brown's acceptance of responsibility, id. § 3E1.1(a)&(b), resulting in a total offense level of 25.

Brown's prior criminal activity yielded a criminal history category of III. At sentencing, the district court found that category III substantially overrepresented the seriousness of Brown's criminal history or the likelihood that he would commit other crimes, and departed downward to a criminal history category of II. Id. § 4A1.3(b)(1). Based on Brown's total offense level and criminal history category, the PSI recommended a sentencing range of 70 to 87 months' imprisonment. Like Mills, however, Brown's effective (or "applicable") Guidelines sentencing range became set at 120 months because he too faced a statutory mandatory minimum sentence under § 841(b)(1)(A)(iii).

At sentencing, the district court rewarded Brown for his substantial assistance to the Government by departing 6 levels downward from the statutory mandatory minimum. See 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1 (2006). Brown thus received a total of 13 levels' downward departure from his originally calculated base offense level. With a new offense level of 19, and a criminal history category of II, Brown's Guidelines sentencing range became 33 to 41 months' imprisonment. The district court sentenced Brown at the bottom of the range, to 33 months,

followed by three years of supervised release.

C.

The district court entered judgment in Mills's case on May 7, 2007. On January 31, 2008, the court ordered Mills and the Government to address the possible retroactive application of an amendment to the crack cocaine Guideline. See infra part II. Mills, through counsel, contended that she was eligible for a reduction in her sentence due to the retroactive application of this amendment. The Government opposed the reduction, arguing that the amendment did not apply to Mills and, accordingly, the district court lacked authority to reduce Mills's sentence. The district court agreed with the Government, ruling on March 24, 2008, that it lacked jurisdiction to modify Mills's sentence. The court labeled this result "nonsensical," however, because although "the Sentencing Commission sought to provide additional relief to offenders such as Mills who played a relatively minor role in a conspiracy involving a relatively large quantity of drugs" by "reduc[ing] the large disparity in sentencing between crack offenders and cocaine offenders," the combined effects of the amendment and 18 U.S.C. § 3582(c)(2) left the court without jurisdiction to adjust Mills's sentence. The court suggested that this "arbitrary" result "deserv[ed] attention by the Sentencing Commission."

The district court entered judgment in Brown's case on May 9, 2007. On

8

February 13, 2008, the court ordered Brown and the Government to address the possible retroactive application of the crack cocaine amendment. Brown contended he was eligible for a sentence reduction, while the Government made much the same argument it did in Mills's case. The district court agreed with the Government, ruling on March 26, 2008, that the relevant amendments did not lower the sentencing range on which Brown's sentence was based, and therefore, that the court lacked authority under § 3582(c)(2) to reduce Brown's sentence.

Defendants timely appealed the district courts' denials of their motions for sentence reduction. We have jurisdiction under 28 U.S.C. § 1291.

II.

We review de novo the district court's legal conclusions about its jurisdiction under the Sentencing Guidelines. United States v. Davis, 587 F.3d 1300, 1303 (11th Cir. 2009) (per curiam) (citing United States v. Jones, 548 F.3d 1366, 1368 (11th Cir. 2008)). Our review of the district court's decision not to reduce a sentence under 18 U.S.C. § 3582(c)(2) is for abuse of discretion. Id. (citing Jones, 548 F.3d at 1368 n.1).

Effective November 1, 2007, the United States Sentencing Commission implemented Amendment 706 to the Guidelines, which lowered by two levels the base offense levels in U.S.S.G. § 2D1.1 applicable to crack cocaine offenses.

Amendment 713, which became effective March 3, 2008, made Amendment 706

retroactive to defendants with crack cocaine convictions who were sentenced under

U.S.S.G. § 2D1.1.  See U.S.S.G. App. C, amends. 706, 713 (Supp. Mar. 3, 2008).[6]

The Sentencing Commission adopted these amendments to attempt to mitigate the

hundred-fold sentencing disparity between defendants convicted of crack cocaine

offenses and those convicted of powder cocaine offenses.  See id. amend. 706

("Reason for Amendment").

Ordinarily, a district court may not modify a previously imposed sentence

"except in specific circumstances delineated in 18 U.S.C. § 3582(c)."  United States

v. Williams, 549 F.3d 1337, 1339 (11th Cir. 2008) (per curiam).  Section 3582(c)

provides, in relevant part, that

> [t]he court may not modify a term of imprisonment once it has been
> imposed except that
>
> . . . .
>
> (2) in the case of a defendant who has been sentenced to a term of
> imprisonment based on a sentencing range that has subsequently been
> lowered by the Sentencing Commission pursuant to 28 U.S.C. [§]
> 994(o), upon motion of the defendant or the Director of the Bureau of
> Prisons, or on its own motion, the court may reduce the term of
> imprisonment, after considering the factors set forth in [18 U.S.C. §]
> 3553(a) to the extent that they are applicable, if such a reduction is

---

[6]  Amendment 706 was itself amended by Amendment 711, which made technical changes to
Amendment 706 and amended the commentary to U.S.S.G. § 2D1.1.  See U.S.S.G. App. C,
amend. 711 (Supp. Mar. 3, 2008).  Throughout this opinion, any reference to Amendment 706
also refers to the changes contained in Amendment 711.

consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).  That is, "[w]hen the Guidelines range pursuant to which a prisoner has been sentenced is subsequently lowered, a prisoner [or the court <u>sua sponte</u>] may move for a reduction in sentence in accordance with that modification."  <u>Davis</u>, 587 F.3d at 1303.

The Sentencing Guidelines manual provides further guidance on how courts should determine § 3582(c)(2) reductions:

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).  As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

U.S.S.G. § 1B1.10(a)(1), p.s. (2008).[7]  To determine whether, and to what extent, such a reduction is warranted,

> the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced.  In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

---

[7] Amendment 706 is listed in U.S.S.G. § 1B1.10(c), and is hence subject to the policy statement in § 1B1.10(b)(1).

Id. § 1B1.10(b)(1).  Further, "[i]f the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range determined under [§ 1B1.10(b)(1)] may be appropriate."  Id. § 1B1.10(b)(2)(B).  The manual cites as an example a defendant whose original Guidelines sentencing range was 70 to 87 months' imprisonment but who received a 56-month sentence—a twenty percent downward departure from the bottom of the sentencing range.  If that defendant's sentencing range became 57 to 71 months after an amendment, the sentencing court could deem a 46-month sentence—again, approximately a twenty percent downward departure from the bottom of the sentencing range—appropriate.  Id. § 1B1.10, comment. (n.3).

If, however, the original sentence was based on something other than offense level calculations under § 2D1.1 (i.e., a statutory mandatory minimum or a career offender classification), an amendment may not affect the sentencing range, and the defendant would be ineligible for a reduction under § 3582(c)(2).  See U.S.S.G. § 1B1.10(a)(2)(B) (2008); United States v. Moore, 541 F.3d 1323, 1327 (11th Cir. 2008) (affirming the district courts' denials of sentence reduction where the defendants' sentencing ranges were based on their career offender designations).

When a statutory mandatory minimum is greater than the otherwise-

12

applicable Guidelines sentencing range, "the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(b) (2008); Williams, 549 F.3d at 1341 ("For those situations in which the mandatory minimum exceeds the range for the entire offense level, the 'guideline sentence' would . . . be the same as the 'guideline range,' even if it involves a 'range' of only one number."). Other circuits to consider the issue have held that "when a defendant's crime triggers a statutory minimum sentence exceeding his guideline range, the resulting sentence is 'based on' the statutory minimum, not the guideline range," even where the defendant has received a downward departure for substantial assistance. United States v. Carter, 595 F.3d 575, 578 (5th Cir. 2010) (per curiam) (citing United States v. Hood, 556 F.3d 226, 233 (4th Cir. 2009)). The Fourth Circuit explained that

> [b]ecause Amendment 706 did not amend the authority conferred by § 3553(e), nor the authority conferred by U.S.S.G. § 5K1.1 implementing § 3553(e), the Amendment was irrelevant to the reduction of Hood's sentence. Amendment 706 amended U.S.S.G. § 2D1.1, but that section is not made applicable to and does not authorize a reduction of sentences for substantial assistance under § 3553(e) and U.S.S.G. § 5K1.1. In short, Hood's sentence was not 'based on a sentencing range . . . lowered by the Sentencing Commission' and therefore was not subject to modification under 18 U.S.C. § 3582(c)(2).

Hood, 556 F.3d at 234. And we have held similarly in Williams, 549 F.3d at 1341 ("[A] downward departure from [a] mandatory minimum does not constitute a waiver or dispensing of [a] new 'guideline range.'").

13

Similar principles controlled the outcome in Moore, where five defendants were convicted of unrelated crack cocaine offenses, and all moved for retroactive application of Amendment 706. All had received career offender designations based on their criminal histories, U.S.S.G. § 4B1.1; Moore himself had received a § 5K1.1 downward departure at sentencing for his substantial assistance. The district courts denied the defendants' motions for sentence reduction because Amendment 706 did not affect their statuses as career offenders, and thus did not lower their applicable Guidelines sentencing ranges. Moore, 541 F.3d at 1325–26. In affirming, this court rejected the defendants' argument that § 3582(c)(2) "should be read to apply in cases where a defendant's base offense level has been altered by a retroactively applicable guideline amendment" such that a district court must recalculate the sentencing range and then determine whether a reduction is appropriate under § 3553(a). Id. at 1327. The fact that Moore had received a downward departure did not change the analysis, as his sentencing range was determined by his career offender status, which operated like a statutory mandatory minimum. See U.S.S.G. § 4B1.1, comment. (backg'd) (2008) (noting that Congress, instead of using a mandatory minimum sentencing statute, used a directive to the Sentencing Commission to develop a career offender Guideline to address a class of recidivist offenders). The court did not base Moore's sentence

14

"on the guideline range that would have applied absent the career offender designation." Id. at 1330.  We said plainly that "[w]here a retroactively applicable guideline amendment reduces a defendant's base offense level, but does not alter the sentencing range upon which his or her sentence was based, § 3582(c)(2) does not authorize a reduction in sentence." Id.

In these appeals, Defendants offer an alternative reading of § 1B1.10(b)(2). Under their interpretation, the district court would apply the amended drug quantity table to assign them base offense levels of 30.  Defendants would then be entitled, under § 1B1.10(b)(2)(B), to a sentence reduction proportionate to the reductions contained in their original sentences, notwithstanding that they would be ineligible for the two-level mitigating role decrease under § 2D1.1(a)(3) because that provision requires a base offense level of 32.  For Brown, this would mean that he would receive a 13-level downward departure from an offense level of 30, resulting in a total offense level of 17.  For Mills, this would mean that she would receive a 10-level downward departure from an offense level of 30, resulting in a total offense level of 20.  Defendants' argument implies that, on resentencing, the district courts could ignore the statutory mandatory minimums originally used in calculating Defendants' sentences because § 1B1.10(b)(2) gives the courts latitude to grant a reduction proportionate to that subtracted from the original sentencing

15

range. In turn, this implies that the amended sentencing range is the operative provision in determining whether Defendants are entitled to a sentence reduction.

Though Defendants present a novel argument, we reject it because the foregoing authority makes clear that the operative provision in determining their applicable sentencing range is the statutory mandatory minimum, 21 U.S.C. § 841(b)(1)(A)(iii), not the crack cocaine Guideline, U.S.S.G. § 2D1.1. Even if Defendants' reading of § 1B1.10(b)(2) is correct (and we do not, today, decide whether it is), Defendants are still subject to the mandatory minimum, upon which their substantial assistance departures—and thus their ultimate sentences—were based. "[T]he guidelines range for a defendant subject to a statutory minimum would not be lowered by an amendment, even if the amendment would otherwise be applicable to the defendant." Williams, 549 F.3d at 1341; U.S.S.G. § 1B1.10 comment. (n.1(A)) (2008). The application note to § 1B1.10(b)(2), although it indicates that "a reduction comparably less than the amended guideline range . . . may be appropriate," U.S.S.G. § 1B1.10, comment. (n.3) (2008) (emphasis added), is inapplicable here because it does not contemplate a statutory mandatory minimum. The law is clear that a sentencing court lacks jurisdiction to consider a § 3582(c)(2) motion, even when an amendment would lower the defendant's otherwise-applicable Guidelines sentencing range, when the defendant was

16

sentenced on the basis of a mandatory minimum. See Williams, 549 F.3d at 1338 (rejecting the defendant's argument that the Government's § 5K1.1 motion "eliminated the mandatory minimum at the time of sentencing," making him eligible for the Amendment 706 reduction).

Defendants attempt to distinguish Moore and Williams by arguing that their cases are "quirks": sui generis applications of the Guidelines that lead to nonsensical, arbitrary results. We are unpersuaded because the distinctions Defendants assert between their cases and Moore and Williams lack substantive differences. Although Moore involved defendants with career offender designations, those designations acted like statutory mandatory minimums, and we held that the defendants' offense levels were therefore not affected by retroactive application of Amendment 706. 541 F.3d at 1327 ("[T]he defendants' sentences were based on the guideline ranges applicable to career offenders under § 4B1.1. The defendants' base offense levels under § 2D1.1 played no role in the calculation of these ranges."). Moreover, we find the facts in Williams to be almost directly on point for these Defendants' cases. The only difference to which Defendants allude is that Williams was sentenced directly under the drug statute, 21 U.S.C. § 841(b)(1)(B)(iii), rather than the crack cocaine Guideline, U.S.S.G. § 2D1.1, because Williams's two prior felony drug convictions subjected him to the statutory

17

mandatory minimum of 120 months' imprisonment. <u>Williams</u>, 549 F.3d at 1338. But Mills and Brown were also <u>effectively</u> sentenced under the statute, in that, notwithstanding their PSIs' § 2D1.1 drug quantity calculations, they were also subject to the mandatory minimum of § 841(b)(1)(A)(iii). Here, as in <u>Williams</u>, the provision governing the Defendants' sentences, and the provision from which the district courts granted substantial assistance departures, was the range set by the statutory mandatory minimum, not the Guidelines sentencing range for crack cocaine offenses that was subsequently changed by Amendment 706.

Lastly, Defendants, in a sentiment echoed by Mills's sentencing court, argue that this outcome reflects the very "arbitrariness" with which the Sentencing Commission was concerned when it attempted to diminish the sentencing disparity between crack cocaine offenders and powder cocaine offenders. But arbitrariness—at least in the sense that Defendants mean it—does not result when defendants' sentences result from mandatory minimums set by Congress, rather than operation of the Sentencing Guidelines. To the extent that Defendants believe that the operation of the Guidelines led to "arbitrary" results in their cases, their redress is with Congress and the mandatory minimum sentences for drug offenses that it has set.

III.

The statutory mandatory minimums to which Defendants were subject meant that they were not sentenced "based on a sentencing range" subsequently lowered by Amendment 706. 18 U.S.C. § 3582(c)(2). The orders of the district courts denying their motions for sentence reduction under 18 U.S.C. § 3582(c)(2) are, therefore,

AFFIRMED.