[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15099
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 22, 2011
JOHN LEY
CLERK

D.C. Docket Nos. 08-01900-CV-T-30-TGW
& 05-00374-CR-T-3

TOREY MCKAY,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 22, 2011)

Before MARCUS and ANDERSON, Circuit Judges, and ALBRITTON,* District
Judge.

MARCUS, Circuit Judge:

_____

* Honorable William H. Albritton, III, United States District Judge for the Middle District
of Alabama, sitting by designation.

Torey McKay ("McKay") appeals the district court's denial of his motion to vacate, set aside, or correct his sentence, filed pursuant to 28 U.S.C. § 2255. In this first-time § 2255 motion, McKay asserts that he was erroneously sentenced as a career offender under U.S.S.G. § 4B1.1 because, in light of subsequent case law, his prior conviction for carrying a concealed weapon is not a "crime of violence" under U.S.S.G. § 4B1.2(a). On appeal, McKay argues that the district court erred in ruling that his sentencing claim is not cognizable under § 2255. McKay also says that the actual innocence exception to the procedural default rule applies to excuse the procedural default of his sentencing claim. Because we conclude that McKay procedurally defaulted his claim by failing to raise it on direct appeal and that the actual innocence exception does not apply to McKay's claim of legal innocence, we AFFIRM the district court's denial of McKay's § 2255 motion.

## I.

### A.

The facts and procedural history of McKay's case are straightforward. On August 25, 2005, McKay was charged in a four-count indictment with drug trafficking offenses in violation of 21 U.S.C. § 841(a)(1), (b)(1) in the United States District Court for the Middle District of Florida. Specifically, McKay was charged with three counts of possession with intent to distribute, and distribution

of, cocaine base ("crack cocaine"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii), (b)(1)(B)(iii) (Counts 1, 2, and 3), and one count of possession with intent to distribute, and distribution of, cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 4). On December 8, 2005, McKay pled guilty to all four counts without a plea agreement.

Pursuant to U.S.S.G. § 2D1.1, the Presentence Investigation Report ("PSI") initially calculated McKay's base offense level at 32, based on the quantity of drugs involved in McKay's offenses. After a three-level reduction for acceptance of responsibility, McKay had an offense level of 29 and a criminal history category of VI, which yielded a Guidelines range of 151 to 188 months' imprisonment.

McKay, however, was classified as a "career offender" under U.S.S.G. § 4B1.1[1] based on two prior felony convictions: (1) carrying a concealed weapon, which was counted as a "crime of violence"[2] and (2) selling cocaine, which was

---

[1] A defendant is a "career offender" if (1) he was "at least eighteen years old at the time [he] committed the instant offense of conviction," (2) "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense," and (3) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). In his § 2255 motion, McKay challenged only the third of these requirements.

[2] Under the Guidelines, a "crime of violence" is defined as a felony under federal or state law that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of

3

counted as a "controlled substance offense."  Because of his career offender status,

McKay's offense level rose to 37, but was reduced to 34 by a three-level reduction

for acceptance of responsibility.  With an offense level of 34 and a criminal history

category of VI, the applicable Guidelines range was 262 to 327 months'

imprisonment.

At his March 29, 2006 sentencing hearing, McKay did not object to the

career offender sentence enhancement.  McKay did, however, explain by way of

mitigation that his drug use and resulting criminal conduct began after the death of

his infant son.  McKay thus argued that the 18 U.S.C. § 3553(a) factors warranted

a downward departure in his sentence, contending that a 180-month (15-year)

sentence would sufficiently serve the statute's sentencing goals.  After considering

the PSI, the § 3553(a) factors, and statements made by McKay, his parents, and his

attorney, the district court ultimately sentenced McKay to 262 months'

imprisonment (21 years, 10 months), which was at the bottom of the applicable

Guidelines range -- 262 months for each of Counts 1, 2, and 3, and 240 months for

Count 4, all to run concurrently.  This 262-month sentence, which was within the

explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a).

At the time of McKay's sentencing, the law of this Circuit was that carrying a concealed weapon constituted a "crime of violence" under the Guidelines.  United States v. Gilbert ("Gilbert I"), 138 F.3d 1371, 1372 (11th Cir. 1998) (per curiam).

statutory maximum of life imprisonment,[3] was to be followed by five years of supervised release for Counts 1, 2, and 3, and three years for Count 4, again, all to run concurrently. McKay was also directed to pay a special assessment in the amount of $400 ($100 per count). The district court expressly found that "the sentence imposed [was] sufficient but not greater than necessary to comply with the statutory purposes of sentencing." McKay did not object to his sentence, nor did he file a direct appeal from his conviction or the ensuing sentence.

Effective November 1, 2007, the United States Sentencing Commission promulgated Amendment 706 to the Sentencing Guidelines, which provided for a two-level reduction in base offense levels in U.S.S.G. § 2D1.1 for crack cocaine offenses. United States v. Mills, 613 F.3d 1070, 1075 (11th Cir. 2010); see also United States v. Moore, 541 F.3d 1323, 1325 (11th Cir. 2008). The Commission made Amendment 706 retroactively applicable, as of March 3, 2008, to defendants with crack cocaine convictions who were sentenced under U.S.S.G. § 2D1.1. Mills, 613 F.3d at 1075; Moore, 541 F.3d at 1325.

---

[3] Specifically, the statutory maximum is 40 years for Counts 1 and 2, 21 U.S.C. § 841(b)(1)(B)(iii), life imprisonment for Count 3, id. § 841(b)(1)(A)(iii), and 20 years for Count 4, id. § 841(b)(1)(C).

On March 8, 2008, in light of Amendment 706, McKay filed a pro se motion to reduce his sentence under 18 U.S.C. § 3582(c)(2).[4]  Soon thereafter, the district court denied McKay's motion on the ground that "[p]ersons classified as career offenders are not affected by the lower guidelines."[5]  McKay did not appeal the district court's ruling.

**B.**

On April 16, 2008, the Supreme Court decided <u>Begay v. United States</u>, 553 U.S. 137 (2008), where it held that driving under the influence of alcohol is not a "violent felony" under the Armed Career Criminal Act ("ACCA"), codified in part

---

[4] Section 3582 provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

[5] A panel of this Court has since held that, because Amendment 706 does not reduce the Guidelines ranges of defendants sentenced as career offenders under U.S.S.G. § 4B1.1, 18 U.S.C. § 3582(c)(2) does not authorize sentence reductions for career offenders.  <u>See</u> <u>Moore</u>, 541 F.3d at 1330.  The parties agree that, if McKay were resentenced without the career offender enhancement and with the application of Amendment 706, his Guidelines range would be 130 to 162 months.

at 18 U.S.C. § 924(e)(2)(B)(ii).[6] Begay, 553 U.S. at 148. In so holding, the Court explained that the crimes listed in clause (ii) of § 924(e)(2)(B) (burglary, arson, extortion, and any felony that involves use of explosives) limit the scope of this clause "to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." Id. at 143. And "[t]he listed crimes," the Court went on, "all typically involve purposeful, violent, and aggressive conduct." Id. at 144-45 (internal quotation marks omitted).

Shortly thereafter, this Court decided United States v. Archer, 531 F.3d 1347 (11th Cir. 2008), applying the analysis drawn from Begay to determine whether carrying a concealed weapon constitutes a "crime of violence" under U.S.S.G. § 4B1.2(a)(2). A panel of this Court explained that we have "repeatedly read the definition of a 'violent felony' under § 924(e) of the Armed Career Criminal Act as 'virtually identical' to the definition of a 'crime of violence' under U.S.S.G. § 4B1.2." Archer, 531 F.3d at 1352. This Court determined that "[c]arrying a concealed weapon does not involve the aggressive, violent conduct that the Supreme Court [in Begay] noted is inherent in the enumerated crimes. . . .

---

[6] Section 924(e)(2)(B) defines "violent felony" as any felony that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another," or "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

Nor does carrying a concealed weapon necessarily involve purposeful conduct." Id. at 1351. We, therefore, held that, "in light of the Supreme Court's decision in Begay, the crime of carrying a concealed firearm may no longer be considered a crime of violence under the Sentencing Guidelines."[7] Id. at 1352.

On October 27, 2008, McKay filed, pro se, an amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, making the nonconstitutional argument that he was erroneously sentenced as a career offender.[8] McKay sought to be resentenced without the career offender enhancement, since, in light of Begay and Archer, his prior conviction for carrying

---

[7] The holding in Gilbert I, 138 F.3d 1371, therefore, did not survive. Archer, 531 F.3d at 1352 ("Here, where the Supreme Court [in Begay] has clearly set forth a new standard to evaluate which crimes constitute 'violent felonies' and 'crimes of violence,' our prior panel precedent in Gilbert[ I] has been undermined to the point of abrogation and we are thus bound to follow this new rule of law.").

After Archer, this Court also held that carrying a concealed weapon is not a "violent felony" under the ACCA. See United States v. Canty, 570 F.3d 1251, 1255 (11th Cir. 2009) (citing Archer, 531 F.3d at 1352).

[8] Under section 2255,

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

8

a concealed weapon no longer qualifies as a "crime of violence." To the extent he had procedurally defaulted this sentencing claim, McKay asked the district court to excuse his default on the ground that he is "actually innocent" of his career offender sentence. He recognized that "the actual innocence exception does not translate easily into the sentencing phase of a non-capital trial." But, arguing that there is "little difference between holding that a defendant can be innocent of the acts required to enhance a sentence in [a] death case and applying a parallel rationale in non-capital cases," McKay nevertheless urged the district court to apply the actual innocence exception to his case. The government responded that McKay's sentencing claim was time-barred, was barred under the procedural default rule, was not cognizable under § 2255, and also failed on the merits because Begay did not apply retroactively to McKay's sentence. See McKay v. United States, No. 8:08-cv-1900-T-30TGW, 2009 WL 2382286, at *1 (M.D. Fla. July 31, 2009).

The district court denied McKay's § 2255 motion on the ground that his Guidelines misapplication claim was not cognizable under § 2255.[9] Id. at *1-2. Having determined that McKay's sentencing claim was a nonconstitutional one,

_____

[9] The district court, therefore, did not address any of the government's other arguments. McKay, 2009 WL 2382286, at *1 n.1.

9

the district court explained that McKay's claim would be cognizable only "if he [could] demonstrate that 1) his claim 'could not have been raised in direct appeal'; and 2) his injury 'would, if condoned, result in a complete miscarriage of justice.'" Id. at *2 (quoting Lynn v. United States, 365 F.3d 1225, 1232-33 (11th Cir. 2004)). The district court found that McKay could have raised his sentencing claim on direct appeal, "even though Begay and Archer had not yet been decided when Petitioner was sentenced." Id. (citing United States v. Coley, 336 F. App'x 933, 936 (11th Cir. 2009) (per curiam) (unpublished) ("Begay and Archer had not yet been decided when Coley was sentenced in 2003; however, if he believed that his career offender status was improper under the guidelines that claim could have been made on direct appeal -- just as Begay and Archer later did.")).

McKay timely filed with the district court a notice of appeal, as well as an application for a certificate of appealability ("COA"). The district court denied McKay's COA application. McKay then filed with this Court an application for a COA, which, on March 8, 2010, we granted concerning the following issues: "Whether the district court erred in finding that [McKay's] sentencing claim about the career-offender enhancement is not cognizable in proceedings under 28 U.S.C. § 2255, and, if cognizable, whether this sentencing claim is procedurally defaulted in any event."

## II.

### A.

In adjudicating the district court's denial of McKay's § 2255 motion, "we review findings of fact for clear error and questions of law de novo." Rhode v. United States, 583 F.3d 1289, 1290 (11th Cir. 2009) (per curiam).

As we have stated, the scope of our review of an unsuccessful § 2255 motion is limited to the issues enumerated in the COA. Id. at 1290-91; see also Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998) (per curiam). Although the COA frames cognizability as the threshold issue, it is in fact the procedural default issue that we answer first. See Doorbal v. Dep't of Corr., 572 F.3d 1222, 1228 (11th Cir. 2009) ("[W]e are ordinarily bound to consider first any issue of procedural default." (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997))). Because we hold that McKay's sentencing claim is procedurally defaulted and that the actual innocence exception does not apply to excuse his default, we leave for another day the question of whether this type of claim is cognizable under § 2255 in the first instance. We, therefore, AFFIRM the district court's denial of McKay's § 2255 motion. See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001) ("[W]e may affirm [the district court's] judgment

11

'on any ground that finds support in the record.'" (quoting Jaffke v. Dunham, 352 U.S. 280, 281 (1957))).

**B.**

Under the procedural default rule, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." Lynn, 365 F.3d at 1234. As the Supreme Court has explained, this rule "is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Massaro v. United States, 538 U.S. 500, 504 (2003). Here, it is beyond dispute that McKay procedurally defaulted his claim that he was erroneously sentenced as a career offender. McKay failed to advance this claim on direct appeal -- indeed, a direct appeal was not even filed. His procedural default can be excused, however, if one of the two exceptions to the procedural default rule applies.

The exceptions are: (1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence. See Lynn, 365 F.3d at 1234. Under the cause and prejudice exception, a § 2255 movant can avoid application of the procedural default bar by "show[ing] cause for not raising the claim of error on direct appeal

and actual prejudice from the alleged error." Id. Under the actual innocence exception -- as interpreted by current Supreme Court doctrine -- a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself.[10] See Dretke v. Haley, 541 U.S. 386, 388 (2004). Because McKay does not argue on appeal that the cause and prejudice exception applies -- nor for that matter did he do so at the district court -- we do not address this exception. We thus limit ourselves to answering whether the actual innocence exception applies to excuse McKay's procedural default, and so pause to examine this exception's contours.

The actual innocence exception has been applied in two distinct contexts: first, in the face of a claim of actual innocence of the crime of conviction and, second, in the face of a claim of actual innocence of a sentence. See Sibley v. Culliver, 377 F.3d 1196, 1205-06 (11th Cir. 2004). To show actual innocence of the crime of conviction, a movant "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of the new evidence of innocence. Schlup v. Delo, 513 U.S. 298, 327 (1995);

---

[10] As will be discussed, infra, although the Supreme Court has only applied the actual innocence of sentence exception in the capital sentencing context, a few of our sister circuits have extended it to claims involving noncapital sentences.

13

see also id. at 332 (O'Connor, J., concurring).[11]  To show actual innocence of a capital sentence, a movant "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under the applicable state law."  Sawyer v. Whitley, 505 U.S. 333, 336 (1992); see also Sibley, 377 F.3d at 1205 (describing how a movant claiming actual innocence of his capital sentence must show that "he is 'innocent' of the death penalty because none of the aggravating factors legally necessary for invocation of the death penalty applied").

Neither the Supreme Court nor this Court has yet ruled on whether Sawyer's actual innocence of sentence exception extends to the noncapital sentencing context.[12]  Several of our sister circuits, however, have spoken on the issue but

---

[11] Although Schlup involved a capital crime, the Court made clear in Calderon v. Thompson, 523 U.S. 538 (1998), that the "more likely than not" standard applies to claims of actual innocence of any crime, even noncapital ones.  See id. at 560-66 (applying the Schlup "more likely than not" standard to a claim of actual innocence of a rape conviction).

[12] In Haley, 541 U.S. 386, the Supreme Court declined to answer this question, in light of the posture of the case.  Id. at 388-89.  The Court held instead that "a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default."  Id. at 393-94.  This holding does not preclude our consideration of actual innocence not only because McKay has failed to present any grounds for cause to excuse his procedural default, but also because there are no nondefaulted claims before us -- McKay's procedurally defaulted sentencing claim is his only claim.

In Gilbert v. United States ("Gilbert II"), 640 F.3d 1293 (11th Cir. 2011) (en banc), this Court addressed the applicability of 28 U.S.C. § 2255(e)'s savings clause to a movant's claim, otherwise barred by § 2255(h)'s second or successive motions bar, that he was erroneously

14

have reached divergent conclusions. The Second and Fourth Circuits have held that the actual innocence of sentence exception does apply in the noncapital sentencing context. See Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 171 (2d Cir. 2000); United States v. Maybeck, 23 F.3d 888, 892-93 (4th Cir. 1994). The Fourth Circuit, however, limits its application to claims of actual innocence of career or habitual offender sentences. United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir. 1999). The Eighth and Tenth Circuits, on the other hand, have explicitly held that the actual innocence of sentence exception is limited to the capital sentencing context. See Embrey v. Hershberger, 131 F.3d 739, 740 (8th Cir. 1997) (en banc) ("[W]e think that Sawyer, in terms, applies only to the sentencing phase of death cases."); United States v. Richards, 5 F.3d 1369, 1371 (10th Cir. 1993) ("A person cannot be actually innocent of a noncapital sentence . . . .").

---

sentenced as a career offender because his prior conviction for carrying a concealed weapon was not a "crime of violence" under the Guidelines. Id. at 1295, 1301-02. In holding that the savings clause does not apply to Guidelines misapplication claims, "at least where the sentence the prisoner is attacking does not exceed the statutory maximum," id. at 1295, we suggested that, for purposes of the savings clause, Sawyer's actual innocence of sentence exception is limited to the capital sentencing context, id. at 1320. Although Gilbert's and McKay's sentencing claims both address the legal classification of the same crime, because Gilbert II addressed the actual innocence of sentence exception in a distinct legal context, the en banc Court's conclusions regarding the exception are not controlling in this case.

15

Despite the lack of binding precedent on this question, the Supreme Court and this Court have articulated several principles that guide our resolution of this case. First, and most importantly, for purposes of the actual innocence exception, "'actual innocence' means <u>factual</u> innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998) (emphasis added); <u>Sawyer</u>, 505 U.S. at 339 ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence."); <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001). This is true whether the allegation of actual innocence is of the crime or of the sentence. <u>Bousley</u>, 523 U.S. at 623 (involving claim of actual innocence of the crime); <u>Sawyer</u>, 505 U.S. at 339 (involving claim of actual innocence of the sentence).

Second, as it has been repeatedly emphasized, the actual innocence exception is a <u>narrow</u> exception. <u>See, e.g.</u>, <u>Sawyer</u>, 505 U.S. at 340 (describing approvingly how, in previous cases, the Court had "emphasized the narrow scope of the fundamental miscarriage of justice exception"); <u>see also</u> <u>id.</u> at 341 ("bear[ing] in mind that the exception for 'actual innocence' is a very narrow exception"); <u>McCleskey v. Zant</u>, 499 U.S. 467, 502 (1991) (referring to the actual innocence exception as "[t]hat narrow exception"); <u>Schlup</u>, 513 U.S. at 333 (O'Connor, J., concurring) (describing the actual innocence exception as a "safety

16

valve for the extraordinary case" (quoting Harris v. Reed, 489 U.S. 255, 271 (1989) (O'Connor, J., concurring)) (internal quotation marks omitted)); Johnson, 256 F.3d at 1171 (describing the actual innocence exception as "exceedingly narrow in scope"). Indeed, the very reason the miscarriage of justice exception was linked to a movant's actual innocence was to ensure that this exception "would remain 'rare' and would only be applied in the 'extraordinary case.'" Schlup, 513 U.S. at 321 (emphases added).

Third, as the Supreme Court has specifically instructed, we must exercise restraint when determining whether to expand the exceptions to the procedural default rule. See Haley, 541 U.S. at 394 ("[I]t is precisely because the various exceptions to the procedural default doctrine are judge-made rules that courts as their stewards must exercise restraint, adding to or expanding them only when necessary."). The Court has explained that "[t]o hold otherwise would be to license district courts to riddle the cause and prejudice standard with ad hoc exceptions whenever they perceive an error to be 'clear' or departure from the rules expedient."[13] Id. at 394-95. "Such an approach," the Court observed,

---

[13] Although the Supreme Court often refers to "cause and prejudice" as a standard that itself has an actual innocence exception, see, e.g., Haley, 541 U.S. at 388, it has also referred to "cause and prejudice" and "actual innocence" as two independent exceptions to the procedural default rule, see, e.g., Bousley, 523 U.S. at 622; accord Lynn, 365 F.3d at 1234.

17

"would have the unhappy effect of prolonging the pendency of federal habeas applications as each new exception is tested in the courts of appeals." Id. at 395.

With these principles in mind, we face the question of whether the actual innocence of sentence exception applies to McKay's claim that he was erroneously sentenced as a career offender because one of his prior convictions does not qualify as a "crime of violence." To answer this question, we need not enter the debate regarding whether the actual innocence exception extends to the noncapital sentencing context. Even assuming that this exception does extend beyond the capital sentencing context, it still does not apply to McKay because his claim is one of legal, rather than factual, innocence and thus fails to fall within the actual innocence exception's purview. See Bousley, 523 U.S. at 623; Sawyer, 505 U.S. at 339.

Consonant with the principle articulated in Bousley and Sawyer, the Second and Fourth Circuits have made clear that, for the actual innocence exception to apply in the noncapital sentencing context, a movant must show that he is factually innocent of the conduct or underlying crime that serves as the predicate for the enhanced sentence. In other words, a claim of mere legal innocence of a sentence would not win the day in either of those circuits. In Spence, 219 F.3d 162, for example, the Second Circuit held that the actual innocence exception applied to

excuse the petitioner's procedural default because the petitioner had shown that he had not actually committed the underlying conduct -- in that case, a robbery -- on which his enhanced sentence was based. Id. at 172.

Similarly, in Maybeck, 23 F.3d 888, the Fourth Circuit held that the § 2255 movant was actually innocent of his career offender sentence because he was "actually innocent of one of the predicate requirements for classification as a career offender" -- that is, he was factually innocent of one of the prior convictions justifying his career offender sentence. Id. at 890, 894. And in United States v. Pettiford, 612 F.3d 270 (4th Cir. 2010), the Fourth Circuit expressly clarified that the actual innocence of sentence exception "applies in the context of habitual offender provisions only where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes." Id. at 284 (emphases added). In Pettiford, the § 2255 movant claimed that he was actually innocent of his ACCA-enhanced sentence on the ground that his prior conviction for assault did not qualify as a "violent felony." Id. at 282. The Fourth Circuit held, however, that the actual innocence exception did not apply to this kind of non-factual claim because, unlike the movant in Maybeck, Pettiford "ma[de] no suggestion whatsoever that he did not actually commit the . . . assault. Rather, he ma[de] the legal argument that this conviction

19

should not have been classified as a 'violent felony' under the ACCA." Id. at 284. And, the Fourth Circuit concluded, "[t]his argument . . . is not cognizable as a claim of actual innocence." Id.

Just like the movant in Pettiford, McKay makes the purely legal argument that he is actually innocent of his career offender sentence because his prior conviction for carrying a concealed weapon should not have been classified as a "crime of violence" under the Guidelines. McKay does not even suggest, because he cannot, that he did not actually commit the crime of carrying a concealed weapon. In other words, he makes no claim of factual innocence of the predicate offense. No circuit court has held that the actual innocence exception is available for claims of purely legal innocence, like McKay's, and we refuse to do so as well. Thus, even if the actual innocence exception were to extend to the noncapital sentencing context (a question we need not decide),[14] this exception would not apply to McKay's claim of legal innocence and thus could not excuse his procedural default.

---

[14] Indeed, our decision in Gilbert II, 640 F.3d 1293, evinced a general reluctance to extend the actual innocence exception beyond the capital sentencing context. See id. at 1321 (finding that "the better view is that the [actual innocence of sentence] exception does not apply to non-capital sentencing errors" (citing Richards, 5 F.3d at 1371; Embrey, 131 F.3d at 740-41)).

We thus decline to extend the actual innocence of sentence exception to claims of legal innocence of a predicate offense justifying an enhanced sentence. In so doing, we heed the Supreme Court's instruction to exercise restraint in expanding the procedural default rule's exceptions. We also keep the actual innocence exception narrow, and ensure that this exception remains "rare" and is only applied in the "extraordinary case."

In short, the actual innocence exception does not apply to McKay's claim that he was erroneously sentenced as a career offender. This sentencing claim is barred by the procedural default rule and, therefore, we AFFIRM the denial of McKay's § 2255 motion.

**AFFIRMED.**