[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15376
Non-Argument Calendar

_____

D.C. Docket Nos. 3:11-cv-00393-HLA-TEM,
3:08-cr-00072-HLA-TEM-1

RICHARD WALLY ROSE,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 4, 2014)

Before HULL, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Richard Wally Rose appeals the denial of his 28 U.S.C. § 2255 motion to

vacate.  At sentencing, without first conducting a thorough colloquy under Faretta

v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975), the district court allowed Rose

to proceed pro se.  During that proceeding, the court enhanced Rose's sentence

under the Armed Career Criminal Act.  Rose pursued an unsuccessful direct appeal

then brought this motion to vacate.  The district court denied his motion but

granted a certificate of appealability on two issues:

> (1) whether the sentencing court's failure to conduct a thorough
> colloquy pursuant to Faretta satisfies the "cause" exception to the
> procedural-bar rule; and

> (2) whether appellate counsel was ineffective for failing to raise the
> Faretta issue on direct appeal.

We review legal issues de novo and findings of fact for clear error.  McKay v.

United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  Our review is limited to the

issues in the COA, id., so we will not review Rose's argument that the ACCA

enhancement was improper.  After a thorough review of the record, we affirm.

## I.

Under the procedural-default rule, a criminal defendant generally must raise

available claims of error on direct appeal.  Id. at 1196.  If he does not, the rule bars

him from raising those claims in a § 2255 motion to vacate.  Id.; see also Parks v.

United States, 832 F.2d 1244, 1246 & n.3 (11th Cir. 1987) (enforcing the rule

where a defendant raised new claims of sentencing error on § 2255 review).  A

defendant may overcome procedural default by showing cause and prejudice:

"cause for not raising the claim of error on direct appeal and actual prejudice from

2

the alleged error." McKay, 657 F.3d at 1196 (quoting Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004)) (internal quotation marks omitted).

Rose failed to raise certain claims of sentencing error on direct appeal, which are now procedurally defaulted. To show cause to overcome that default, Rose must demonstrate that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [his] own conduct." Lynn, 365 F.3d at 1235. Rose contends that the district court committed Faretta error by permitting him to proceed pro se at sentencing, and that error should serve as cause. But, if there was error at sentencing, it cannot overcome the procedural-default bar, which prevents § 2255 movants from raising claims they failed to assert on direct appeal. See McKay, 657 F.3d at 1196 ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." (emphasis added) (citation omitted)); see also Lynn, 365 F.3d at 1235 (holding that to show cause to overcome procedural default, a defendant must demonstrate that something prevented him "from raising his claims on direct appeal . . . ." (emphasis added)). And in any event, the record makes clear that any alleged Faretta error at sentencing had no effect on his direct appeal for a simple reason: his direct appeal was counselled. Whether or not any alleged Faretta error

3

prevented Rose from raising claims at sentencing, it did not prevent him or his appellate counsel "from raising his claims on direct appeal," Lynn, 365 F.3d at 1235, and therefore cannot serve as cause to excuse his procedural default.[1]

In conducting a procedural-default analysis, the question is "whether at the time of the direct appeal the claim was available at all." Lynn, 365 F.3d at 1235. Rose's claims of sentencing error were available on direct appeal; he simply did not raise them. And because the alleged Faretta error had no effect on whether he raised those claims on direct appeal, it cannot serve as cause to excuse his procedural default.

## II.

Rose also argues that his appellate counsel was ineffective for failing to raise the same Faretta argument on direct appeal. Ineffective assistance of counsel may serve as cause to excuse procedural default, but only if the ineffective-assistance claim has merit. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

---

[1] Rose may protest that the alleged Faretta error still caused him some harm. Rose argues that the district court's permitting him to proceed pro se was error that caused him to fail to advance his claims at sentencing. And because claims not advanced in the district court are reviewed on appeal only for plain error, United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776–77 (1993), Rose might insist that the Faretta error severely limited his chances of success on appeal. Maybe so. But Rose's failure to advance his claims in the district court does not excuse his obligation to raise them on direct appeal, whatever standard of review they would have faced. That is because the "perceived futility of a claim does not constitute cause for procedural default." Lynn, 365 F.3d at 1235 n.19; see also Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611 (1998).

4

"A claim of ineffective assistance of counsel is a mixed question of law and fact that we review de novo." Gordon v. United States, 518 F.3d 1291, 1296 (11th Cir. 2008). To prevail on a claim of ineffective assistance, a defendant must show that (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064 (1984). A defendant may satisfy the prejudice prong by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. ___, ___, 131 S. Ct. 770, 792 (2011). Appellate counsel's performance is prejudicial if a "neglected claim would have a reasonable probability of success on appeal." Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991). Because, as discussed below, we find that the Faretta claim had no "reasonable probability of success on appeal," see id., appellate counsel's failure to raise it was not prejudicial. See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." (citation omitted)). Rose's

5

ineffective-assistance claim is thus meritless and cannot serve as cause to excuse his procedural default.  See Nyhuis, 211 F.3d at 1344.

The Sixth Amendment includes an implicit right to self-representation, and a defendant cannot be compelled to accept the assistance of counsel.  Faretta, 422 U.S. at 819, 833–34, 95 S. Ct. at 2533, 2540–41.  To invoke the right to self-representation, a defendant must "knowingly and intelligently" waive his right to counsel.  Id. at 835, 95 S. Ct. at 2541.  "The ideal method of assuring a voluntary waiver is for the trial judge to conduct a . . . hearing at which the defendant would be informed of the charges, basic trial procedures, and the hazards of self-representation."  United States v. Stanley, 739 F.3d 633, 645 (11th Cir. 2014) (citation omitted).  This so-called Faretta hearing should make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  Faretta, 422 U.S. at 835, 95 S. Ct. at 2541 (citation omitted).  But the Faretta hearing is merely "a means to the end" of ensuring that a defendant's waiver is knowing and voluntary.  Stanley, 739 F.3d at 645 (citation omitted).  That is, the lack of a Faretta hearing "is not error as a matter of law.  If the trial record shows that a defendant knowingly and voluntarily elected to represent himself, the Faretta standard will be satisfied."  Id. (citation omitted).  We consider

6

eight factors when determining whether a waiver of the right to counsel was

knowing and voluntary:

> (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which that counsel aided defendant; (7) mistreatment or coercion of the defendant; and (8) whether the defendant was trying to manipulate the events of the trial.

Id. at 645–46 (citing Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065–67 (11th Cir.

1986)).  Though a defendant's waiver must be knowing and voluntary at the time

he makes it, we may "look to subsequent events" to find "evidence of what would

have been true when a defendant first waived his rights."  Id. at 646; see also Jones

v. Walker, 540 F.3d 1277, 1295 (11th Cir. 2008) (en banc) ("We review Jones'

performance during trial, not because we wish to determine whether his trial

conduct was good or bad, but because his performance at trial provides some

circumstantial evidence of what he knew at the time he waived his right to

counsel.").  We have applied this analysis to a waiver made at sentencing.  See,

e.g., United States v. Evans, 478 F.3d 1332, 1339–40 (11th Cir. 2007); Nelson v.

Alabama, 292 F.3d 1291, 1297–1301 (11th Cir. 2002).

Examining the record with the eight Fitzpatrick factors in mind, we conclude

that nearly every factor points in one direction: Rose knowingly and voluntarily

waived his right to counsel.  For that reason, his appellate counsel's failure to raise a Faretta argument on appeal does not meet Strickland's prejudice prong.

First, Rose was fifty-five years old at the time of sentencing, had obtained a GED and had no history of mental- or physical-health issues.  See Nelson, 292 F.3d at 1301 (concluding, under § 2254, that nothing in the defendant's history undermined the reasonableness of the state court's determination that his waiver was valid where the defendant was fifty years old and had obtained a GED).

Second, he had extensive contact with counsel prior to his decision to proceed pro se, including three court-appointed lawyers in this very case.  In fact, one had represented him through a jury trial.  See Stanley, 739 F.3d at 647–48 (holding that representation by counsel until the first day of trial "likely exposed [the defndant] to the complexity of his case and the legal process"); cf. Fitzpatrick, 800 F.2d at 1066 (explaining that the defendant's "significant contact" with an attorney before trial, even though he never actually retained counsel, was enough to satisfy this factor).

Third, as demonstrated by his comments and performance at sentencing, it is clear that Rose had ample of knowledge about federal sentencing, including possible penalties and potential objections.  He said he had read and understood the PSR.  He objected at sentencing to several aspects of the PSR and presented the district court with printed appellate cases in support of his objections.  Rose also

displayed his knowledge even before sentencing by filing several pro se documents objecting to his conviction and the PSR's conclusions, including the applicability of the ACCA enhancement. See Fitzpatrick, 800 F.2d at 1067 (finding that the defendant's "knowledge of possible defenses tends to show that he understood at least some of the complexities of his case"). And having read the PSR, Rose was aware that he faced a mandatory minimum of fifteen years and that the probation office was recommending a guideline range of 188- to 235-months imprisonment.

Fourth, he demonstrated an understanding of the rules of procedure and courtroom decorum necessary to conduct himself without apparent incident at sentencing.[2] See Stanley, 739 F.3d at 646 ("[W]e consider how ably a pro se defendant performed in presenting his case as evidence of his understanding of rules of procedure, evidence, and courtroom decorum.").

Fifth, Rose's substantial criminal history indicates that he had significant experience with criminal trials (or, as is relevant here, sentencing proceedings). Cf. Greene v. United States, 880 F.2d 1299, 1304 (11th Cir. 1989) (remarking that a defendant's "substantial experience with the criminal justice system" is "a factor which weighs in favor of a finding of effective waiver").

Sixth, while standby counsel was not appointed, Rose did not request standby counsel. Even if this factor suggests Rose's waiver was invalid, it alone

---

[2] The rules of evidence do not govern sentencing proceedings, so that element of this Fitzpatrick factor is not relevant here. See United States Sentencing Guideline § 6A1.3(a).

does not change our conclusion.  See United States v. Cash, 47 F.3d 1083, 1089 (11th Cir. 1995) ("All [Fitpatrick] factors need not point in the same direction." (citing Stano v. Singletary, 921 F.2d 1125, 1148 (11th Cir. 1991) (en banc))).  Furthermore, Rose clearly indicated his desire to proceed pro se, by explicit statement to the district court at sentencing, by pre-sentencing motion and by his efforts, both before and at sentencing, to lodge pro se objections to his conviction and the PSR.

Seventh and eighth, the record contains no evidence either that Rose was mistreated or coerced into waiving his right to counsel or that he waived counsel in an effort to manipulate the proceedings.

Finally, we note that the magistrate judge told Rose at an earlier hearing that he believed it would be a bad idea for Rose to represent himself, and Rose indicated his agreement.  Despite this warning, Rose persisted in explicitly requesting to proceed pro se, both before and at sentencing.

Considering all the factors, we find no reasonable probability that a Faretta claim would have succeeded on direct appeal.  For that reason, Rose's appellate counsel's failure to raise it could not have prejudiced him and thus cannot support a meritorious ineffective-assistance claim.  And because his ineffective-assistance claim is meritless, it cannot serve as cause to excuse his procedural default.

**AFFIRMED.**