[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15376
Non-Argument Calendar
_____

D.C. Docket Nos. 3:11-cv-00393-HLA-TEM,
3:08-cr-00072-HLA-TEM-1

RICHARD WALLY ROSE,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 6, 2018)

Before MARCUS, MARTIN, and HULL, Circuit Judges.

PER CURIAM:

Richard Wally Rose appeals the District Court's denial of his motion to

vacate his conviction and sentence under 28 U.S.C. § 2255.  This appeal has a

lengthy and complicated procedural history during 2009 to 2017, which we discuss as necessary background to the issues currently before this Court.

## I.  2009 SENTENCE

In 2008, a jury convicted Mr. Rose of one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  The presentence investigation report ("PSR") said Mr. Rose qualified for a longer sentence under the Armed Career Criminal Act ("ACCA").  Based in part on this ACCA enhancement, the PSR set Mr. Rose's adjusted offense level at 33 with a criminal history category of IV.  This yielded an advisory range of 188 to 235 months of imprisonment under the United States Sentencing Guidelines.

The PSR indicated that Mr. Rose had six prior felony convictions, listing them as: (1) a 1972 Florida grand larceny conviction, for which Mr. Rose received a three-year sentence; (2) a 1976 federal conviction for bank robbery and aggravated assault with a deadly weapon, for which Mr. Rose received a fifteen-year sentence; (3) a 1976 Pennsylvania robbery conviction, for which Mr. Rose received a four-to-eight-year sentence; (4) a 1985 Florida conviction for unarmed robbery, for which Mr. Rose received a four-year sentence; (5) a 1985 Florida conviction for possession of a firearm by a convicted felon, for which Mr. Rose received a four-year sentence; and (6) a 2000 Florida conviction for aggravated

2

battery, for which Mr. Rose received a sentence of five years and 57 days.  Mr. Rose has never disputed that he has these six felony convictions.

In an addendum to the PSR, the probation office identified three of Mr. Rose's felony convictions as qualifying offenses under the ACCA: (1) the 1976 federal conviction for bank robbery and aggravated assault with a deadly weapon; (2) the 1985 Florida unarmed robbery conviction; and (3) the 2000 Florida aggravated battery conviction.  The PSR addendum cited 18 U.S.C. § 924(e)(1) and stated the ACCA sentencing enhancement applies in the case of a person who violates § 922(g) and has three prior convictions for a violent felony or a serious drug offense or both.  The PSR addendum did not cite or mention any of the three clauses in § 924(e)(2)(B) that define violent felony, which are the enumerated crimes clause, the elements clause, and the residual clause.  See 18 U.S.C. § 924(e)(2)(B).

At his 2009 sentencing in this case, Mr. Rose, who had already discharged three court-appointed lawyers, elected to proceed pro se.  Mr. Rose objected to the ACCA enhancement, but his objections did not mention the elements or residual clauses or any clause of the ACCA.  Mr. Rose's objections never claimed the residual clause was unconstitutionally vague and never claimed his aggravated battery conviction did not require enough physical force to qualify under the

3

elements (use-of-force) clause.[1]  Rather, Mr. Rose actually contended that his 2000 Florida aggravated battery conviction (case no. 99-5744) was his only countable ACCA offense because the other two convictions were more than 15 years old. The government argued that the ACCA and U.S.S.G § 4B1.4, unlike other provisions of the Sentencing Guidelines, did not have a "15 year look-back period" and that even old convictions counted.

The District Court overruled Mr. Rose's time-bar objection and determined that because Mr. Rose was an armed career criminal, his offense level was 33 and his criminal history category was IV, for an advisory guidelines range of 188 to 235 months' imprisonment.

At the 2009 sentencing, the government did submit certified copies of the three prior convictions identified in the PSR addendum as ACCA predicates. Specifically, the government provided the judgment and a copy of Mr. Rose's fingerprints from each conviction.  Mr. Rose did not object to these exhibits,

---

[1] Prior to his sentencing, Mr. Rose filed pro se written objections to the PSR.  The District Court struck Mr. Rose's pro se written objections because he was represented by counsel at the time he filed them.

However, at the later sentencing hearing, Mr. Rose knowingly and voluntarily waived counsel.  United States v. Rose, 590 F. App'x 937, 941 (11th Cir. 2014) (concluding Mr. Rose's waiver of counsel was knowing and voluntary).  Mr. Rose "was fifty-five years old," "had obtained a GED and had no history of mental- or physical-health issues."  Id.  Mr. Rose 'had extensive contact with counsel prior to his decision to proceed pro se."  Id.  At sentencing, Mr. Rose "said he had read and understood the PSR, "objected . . . to several aspects of the PSR," and "presented the district court with appellate cases in support of his objections."  Id.  Mr. Rose's "substantial criminal history indicate[d] that he had significant experience with criminal trials (or, as relevant here, sentencing proceedings)."  Id. at 942.

4

except to reassert his objection for the record that two of the convictions were "out of time." The District Court admitted the exhibits.

The District Court imposed a 211-month sentence, in the middle of the advisory guidelines range, followed by 60-months supervised release.

## II. DIRECT APPEAL

Mr. Rose, now represented by counsel, appealed his sentence but, once again, did not claim that his convictions did not qualify under the elements or residual clauses, or even reassert his argument that his predicate convictions that were more than 15 years old did not count for ACCA purposes. See United States v. Rose, 368 F. App'x 55, 56-57 (11th Cir. 2010) ("Rose I"). Instead, Mr. Rose argued that "the armed career criminal guideline, U.S.S.G. § 4B1.4, is itself unreasonable because it permits the inclusion of convictions, like his 1976 and 1985 convictions, that are too old to count towards the criminal history category." Id.

In February 2010, this Court affirmed his sentence. Id. at 56. The Court explained that U.S.S.G. § 4B1.4 "follows [the ACCA's] Congressional mandate" and, like the ACCA, "does not place time limits on the prior convictions that count toward classification as an armed career criminal." Id. at 57–58. The Court concluded that "U.S.S.G. § 4B1.4 reasonably applies 18 U.S.C. § 924(e)" and that

5

"the district court did not err in considering Rose's 1976 and 1985 convictions for purposes of enhancing his sentence under § 4B1.4." Id. at 58.

In sum, during his direct appeal in 2010, Mr. Rose never claimed that his three prior convictions, including his 2000 Florida aggravated battery conviction, did not qualify under the elements clause and never claimed that the residual clause was unconstitutionally void for vagueness.

## II.  SECTION 2255 MOTION

### A.    2011 Motion Made a Lack-of-Violent-Force Claim Under Curtis Johnson

In April 2011, Mr. Rose filed a pro se motion to vacate his conviction and sentence under 28 U.S.C. § 2255.  Mr. Rose raised several challenges in his motion.  In one of them, "ground three (b)," he argued for the first time that his 2000 Florida aggravated battery conviction did not require "violent force" and was no longer a violent felony after Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265 (2010) ("Curtis Johnson").  This, of course, is an elements-clause claim.

In Curtis Johnson, the Supreme Court held that the term "physical force" in the ACCA's elements clause means "violent force—that is, force capable of causing physical pain or injury to another person" and concluded that a Florida felony conviction for simple battery under Florida Statutes § 784.03(1)(a)(1) and (2), which can be committed by a slight touching, does not have as an element this

6

kind of physical force.  Curtis Johnson, 559 U.S. at 138, 140, 130 S. Ct. at 1269–70, 1271.

The government responded that Mr. Rose's attack on his 2000 Florida aggravated battery conviction—as not involving violent force and not qualifying under the elements clause—was procedurally defaulted because he did not raise it on direct appeal.  Mr. Rose replied that he did not procedurally default his sentencing claim because he was pro se at sentencing, that he was not given a Faretta hearing before being allowed to represent himself, and that a Faretta error was cause to excuse his procedural error.  See Faretta v. California, 422 U.S. 806, 834–35, 95 S. Ct. 2525, 2540–41 (1975) (concluding that, before a defendant exercises his right to self-representation, he "should be made aware of the dangers and disadvantages of self-representation," such that the record will show he knowing and voluntary waived his right to counsel).

## B.    District Court's Denial of § 2255 Motion

The District Court denied Mr. Rose's § 2255 motion.  As to Mr. Rose's argument that his 2000 aggravated battery conviction did not qualify under the ACCA (ground three (b) of his § 2255 motion), the District Court rejected Mr. Rose's Faretta argument and concluded that his ACCA-elements-clause challenge was procedurally defaulted and that Mr. Rose had not shown cause or prejudice to excuse the procedural bar.

7

Alternatively, the District Court concluded that Mr. Rose could not prevail on his ACCA challenge in ground three (b) because, inter alia, "the underlying facts of Petitioner's aggravated battery conviction set forth in the Pre-sentence Investigation (PSI) illustrate that purposeful, violent and aggressive conduct was involved, and not slight intentional touching, which was the concern of the [Curtis] Johnson Court." The District Court also denied a certificate of appealability ("COA") on the merits of that ACCA issue (i.e., the elements-clause claim) but granted a COA as to: (1) whether its failure to make a Faretta inquiry satisfied the cause and prejudice exception to the procedural-bar rule; and (2) whether Mr. Rose's appellate counsel on direct appeal was ineffective for failing to raise the Faretta issue.

Notably, in the District Court, Mr. Rose's § 2255 motion never contended his prior convictions had been counted under the ACCA's residual clause at his 2009 sentencing. Rather, his Faretta issue related to procedural default of his elements-clause claim that his aggravated battery conviction did not involve violent force as required by Curtis Johnson (and thus did not qualify under the elements clause of the ACCA).

8

**C.    This Court's Affirmance as to <u>Faretta</u> Issues and Procedural Bar**

Mr. Rose appealed <u>pro se</u>, and this Court affirmed in 2014.  <u>United States v. Rose</u>, 590 F. App'x 937, 939 (11th Cir. 2014) ("<u>Rose II</u>").  This Court identified the two issues in the COA as follows:

> (1) whether the sentencing court's failure to conduct a thorough colloquy pursuant to <u>Faretta</u> satisfies the "cause" exception to the procedural-bar rule; and
>
> (2) whether appellate counsel was ineffective for failing to raise the <u>Faretta</u> issue on direct appeal.

<u>Id.</u> at 938. [2]

In affirming the denial of Mr. Rose's § 2255 motion in 2014, this Court concluded that "Rose failed to raise certain claims of sentencing error <u>on direct appeal</u>, which are now procedurally defaulted."  <u>Id.</u> at 939 (emphasis added).  This Court explained: (1) "[u]nder the procedural-default rule, a criminal defendant generally must raise available claims of error <u>on direct appeal</u>"; and (2) "[i]f he does not, the rule bars him from raising those claims in a § 2255 motion to vacate." <u>Id.</u> (emphasis added).  To overcome this procedural default, Mr. Rose in his § 2255 appeal claimed the District Court's failure to conduct a <u>Faretta</u> hearing resulted in his not having an attorney at sentencing and caused his procedural default of his

---

[2] Mr. Rose later asked this Court to expand the COA to include two trial issues, but not the ACCA elements-clause issue.  Mr. Rose's request was denied.

sentencing-error claims (one of which was that his aggravated battery conviction did not qualify after Curtis Johnson).  Id.

Rejecting Mr. Rose's "cause" claim, this Court pointed out that "the record makes clear that any alleged Faretta error at sentencing had no effect on his direct appeal for a simple reason: his direct appeal was counselled."  Id.  "Rose's claims of sentencing error were available on direct appeal; he simply did not raise them." Id.

In Rose II, this Court also concluded that "[w]hether or not any alleged Faretta error prevented Rose from raising claims at sentencing, it did not prevent him or his appellate counsel from raising his claims on direct appeal," and that therefore any Faretta error at sentencing "cannot serve as cause to excuse his procedural default" of his sentencing error claims.  Id. at 939–40 (internal quotation marks omitted).

This Court also rejected Mr. Rose's claim that his appellate counsel on direct appeal was ineffective for failing to raise the Faretta claim at that time.  Id. at 940. Because Mr. Rose knowingly and voluntarily waived his right to counsel, there was "no reasonable probability that a Faretta claim would have succeeded on direct appeal."  Id. at 942.  Thus, appellate counsel's failure to raise a Faretta claim did

not prejudice Mr. Rose, his ineffective assistance claim "is meritless," and the

Faretta issue "cannot serve as cause to excuse his procedural default." Id.[3]

### III.  PETITION TO SUPREME COURT IN § 2255 CASE

Subsequently, on June 26, 2015, the Supreme Court invalidated the residual

clause of the ACCA as unconstitutionally vague. Johnson v. United States, 576

U.S. ____, ____, 135 S. Ct. 2551, 2557 (2015) ("Johnson").

Four days after Johnson, on June 29, 2015, Mr. Rose filed a pro se petition

for writ of certiorari in the United States Supreme Court in which he: (1) raised his

two Faretta-related issues involving his ACCA elements-clause challenge under

Curtis Johnson; and (2) for the first time raised a claim that the residual clause was

unconstitutionally too vague under Johnson and thus none of his prior convictions

qualified as predicate ACCA convictions.

Then, in an October 13, 2015 summary order, the Supreme Court granted

Mr. Rose's petition, vacated this Court's judgment, and remanded the case to this

Court "for further consideration in light of Johnson." Rose, ___ U.S. ___, 136 S.

Ct. 320 (2015).

In April 2016, the Supreme Court clarified that the new rule of constitutional

law it announced in Johnson applies retroactively to cases on collateral review.

Welch v. United States, 578 U.S. ___, 136 S. Ct. 1257, 1268 (2016).

---

[3] Mr. Rose filed a petition for rehearing en banc, which this Court denied on January 28, 2015.

## IV.  EXPANDED COA TO ADDRESS <u>JOHNSON</u> CLAIM

Shortly after <u>Welch</u>, Counsel was appointed to represent Mr. Rose in this appeal of the denial of his § 2255 motion.  On June 24, 2016, Counsel filed a motion requesting this Court to review Mr. Rose's case in light of <u>Johnson</u> by either (1) expanding the COA to include the issue of whether Mr. Rose's lengthened prison sentence under the ACCA is unlawful; or (2) remanding his case to the District Court to consider that issue in the first instance.[4]  This Court then expanded the prior COA to include two more issues:

(1)    Whether Rose's <u>Johnson</u> claim is waived or procedurally barred;

(2)    Whether Rose's sentence is now unconstitutional, in light of <u>Johnson</u> and the unconstitutionality of the residual clause of the Armed Career Criminal Act or whether Mr. Rose has three prior predicate convictions that qualify under the enumerated crimes or elements clauses.

During 2016-17, both parties filed supplemental briefing on these two <u>Johnson</u>-related issues.

In sum, the COA in this § 2255 appeal now encompasses the two <u>Faretta</u>-related issues involving "cause" for Mr. Rose's procedural default of the sentencing-error claims in his § 2255 motion (which included an ACCA violent-

---

[4] Recognizing that the one-year deadline to file a § 2255 motion based on <u>Johnson</u> was approaching, counsel also filed an application for leave to file a second or successive § 2255 motion on Mr. Rose's behalf in case he was not allowed to present his <u>Johnson</u> claim in this appeal.  This Court denied the application as premature but noted that the denial was "without prejudice to Rose seeking future leave to file a second or successive § 2255 motion."  <u>In re Rose</u>, No. 16-14215, manuscript order at 2–3 (11th Cir. July 22, 2016).

force/elements-clause challenge under Curtis Johnson) and the two above Johnson-related issues involving his ACCA residual-clause challenge.

## V. DISCUSSION

### A.   The ACCA

The ACCA caps a federal prison sentence for possessing a firearm as a felon under 18 U.S.C. § 922(g)(1) at ten years, id. § 924(a)(2), except when the person being sentenced has been convicted of three or more violent felonies or serious drug offenses in the past.  18 U.S.C. § 924(e)(1).  The ACCA requires a minimum prison sentence of fifteen years for someone with three or more prior violent felony or serious drug convictions.  Id. § 924(e)(1).  The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

> (i)   has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)  is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 924(e)(2)(B)(i)–(ii).  Section 924(e)(2)(B)(i) is commonly referred to as the "elements clause."  Meanwhile, the first part of § 924(e)(2)(B)(ii)—"is burglary, arson, or extortion, [or] involves use of explosives"—is called the "enumerated crimes clause," and the remainder of that section—"otherwise involves conduct that presents a serious potential risk of physical injury to another"—is known as the "residual clause."

13

As explained above, the Johnson Supreme Court held that the residual clause of the ACCA was unconstitutionally vague. 576 U.S. at ___, 135 S. Ct. at 2557. The Supreme Court noted, however, that its decision "does not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." Id. at 2563. The Supreme Court later elaborated that Johnson applies retroactively to cases on collateral review. Welch, 578 U.S. at ___, 136 S. Ct. at 1268. As a result, a person's prior conviction can qualify as a violent felony under the ACCA only if it falls within either the elements clause or the enumerated crimes clause.

Mr. Rose does not dispute that he did not raise an elements-clause or residual-clause challenge on direct appeal and procedurally defaulted those claims. Rather, he argues he has shown cause and prejudice to excuse his procedural default. Our discussion below proceeds in five parts. We first outline the relevant law on procedural default and cause and prejudice to excuse a procedural default. Second, we explain why, as our earlier Rose II decision in this same § 2255 appeal held, Mr. Rose's § 2255 motion has not shown cause—either Faretta error or ineffective appellate counsel—for failing to raise his claim of sentencing errors in his ACCA sentence on direct appeal. Mr. Rose thus has not shown cause to excuse his procedural default of his violent-force/elements-clause challenge to his 2000 aggravated battery conviction.

14

Third, we discuss why Mr. Rose has shown "cause" for failing to raise a constitutional vagueness challenge to the residual clause, which is now his Johnson claim. Fourth, given that Mr. Rose must also establish actual prejudice to excuse the procedural default, we explain why we remand this case to the District Court to decide the issue of actual prejudice in the first instance. Fifth, we discuss the scope of the remand and explain why the government on remand is not prohibited from relying on Mr. Rose's 1976 Pennsylvania robbery conviction as the third predicate. We start with the law of procedural default.

## B.    Procedural Default

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quotation marks omitted). However, a § 2255 petitioner's procedural default can be excused if he shows either (1) "cause excusing his failure to raise the issue previously and actual prejudice resulting from the alleged error," United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000); or (2) "a constitutional violation has probably resulted in the [petitioner being] convict[ed] of [a crime for which he] is actually innocent." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (per curiam) (quotation marks omitted). Mr. Rose does not invoke the actual innocence

15

exception to the procedural default rule. Instead, he says he overcomes the procedural default because he had cause for failing to raise his ACCA challenges on direct appeal and was prejudiced by the underlying Faretta error (as to his elements clause challenge) and the Johnson error (as to his residual clause challenge).

To demonstrate cause, a § 2255 petitioner must show that "some objective factor external to the defense" prevented him from presenting that claim on direct appeal and "that this factor cannot be fairly attributable" to the petitioner's own conduct. Lynn, 365 F.3d at 1235. In determining whether cause exists, "the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all." Id.

## C.    Procedural Default of His Violent-Force/Elements-Clause Challenge to His Aggravated Battery Conviction

As outlined above, in ground three (b) of his § 2255 Motion filed in 2011, Mr. Rose claimed his 2000 aggravated battery conviction no longer counted as a violent felony under the ACCA's elements clause after the 2010 Curtis Johnson decision. The government responded that Mr. Rose had procedurally defaulted that claim by failing to raise it on direct appeal. The District Court agreed and denied Mr. Rose's § 2255 motion.

16

The District Court concluded that Mr. Rose had procedurally defaulted that sentencing-error claim and had not shown an external-factor cause—either a Faretta error or ineffective appellate counsel—to excuse his procedural default.

In 2014, this Court affirmed the District Court's denial of his § 2255 motion based on Mr. Rose's procedural default of his alleged sentencing errors by not raising them on direct appeal. Rose II, 590 F. App'x at 942. As explained in detail above, this Court found that Mr. Rose had not shown "cause"—either a Faretta error or ineffective appellate counsel—to excuse his procedural default. Id. There was no Faretta error because Mr. Rose knowingly and voluntarily waived his right to counsel at sentencing (after having had three attorneys), and Mr. Rose's appellate counsel on direct appeal was not ineffective for failing to raise a Faretta claim as cause to excuse Mr. Rose's procedural default. Id. at 939–42.

To date, Mr. Rose has not shown any error in our Rose II opinion as to affirming the denial of his § 2255 motion (which had included a violent-force/ elements-clause challenge), and we hereby reinstate our Rose II opinion, but only as to the issues decided in Rose II. At the time of Rose II in 2014, Mr. Rose's § 2255 sentencing claims involved only a Curtis Johnson-elements-clause claim and his aggravated battery conviction. Mr. Rose had not yet claimed his aggravated battery conviction was an aggravated battery on a pregnant woman and had not made a residual-clause claim.

17

Subsequent to our affirmance in Rose II, Mr. Rose in his petition for certiorari included a Johnson claim for the first time. Thus we now turn to that claim.

## D.    Procedural Default of Residual-Clause Challenge

As to the residual clause, Mr. Rose's argument is two-fold. First, Mr. Rose now argues that because Johnson invalidated the residual clause, his 2000 Florida conviction for aggravated battery does not qualify as a violent felony under the ACCA because that conviction was actually for an aggravated battery on a pregnant woman under Florida Statutes § 784.045(1)(B). The exhibits of the convictions introduced at the 2009 sentencing expressly show that Mr. Rose's 2000 aggravated battery conviction was for aggravated battery on a pregnant woman under Florida Statutes § 784.045(1)(b).

Second, Mr. Rose maintains that his 2000 aggravated battery predicate was counted based on the residual clause and that, without that 2000 aggravated battery predicate being counted under the residual clause, he falls short of the three predicates necessary to support a longer sentence under the ACCA.

The government argues Mr. Rose procedurally defaulted his Johnson claim because he failed to raise a vagueness challenge to the ACCA's residual clause on direct appeal. Nonetheless, the government says Mr. Rose: (1) has "failed to meet his burden to show that, post-Johnson, he no longer qualified as an armed career

18

criminal"; and (2) also has, in particular, failed to show that his 1976 Pennsylvania robbery conviction, listed in the PSR, does not count as a violent felony under the ACCA. According to the government, absent such a showing, Mr. Rose, as the § 2255 movant, cannot carry his burden to demonstrate that he is entitled to relief. The government argues that "it matters not that the district court did not rely on that 1976 robbery conviction in determining whether Rose qualified as an armed career criminal . . . given that Rose bears the burden of showing that he is entitled to relief from his ACCA-enhanced sentence."

We first explain why Mr. Rose has established "cause" as required to excuse his procedural default of his new Johnson residual-clause challenge to the validity of his ACCA-enhanced sentence. We then turn to actual prejudice, which is also required to excuse Mr. Rose's procedural default of his new Johnson residual-clause claim.

The Supreme Court has recognized that "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default." Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611 (1998) (quoting Reed v. Ross, 468 U.S. 1, 16, 104 S. Ct. 2901, 2910 (1984)). In Reed v. Ross, 468 U.S. 1, 104 S. Ct. 2901 (1984), the Supreme Court identified three situations in which a newly recognized constitutional rule might be "so novel" that it is considered "not reasonably available": (1) when the Supreme

19

Court "explicitly overrule[s] one of [its] precedents" in announcing its constitutional rule; (2) when the Supreme Court's decision "overturn[s] a longstanding and widespread practice to which [it] has not spoken, but which a near-unanimous body of lower court authority has expressly approved"; and (3) when the Supreme Court "disapprove[s] a practice [it] arguably has sanctioned in prior cases." Id. at 16–17, 104 S. Ct. at 2910–11 (quotation marks omitted and alterations adopted). The Supreme Court explained that "[b]y definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis" upon which a petitioner previously could have brought a claim in line with that rule.[5] Id. at 17, 104 S. Ct. at 2911. Thus, a petitioner's failure to assert such a claim on direct appeal "is sufficiently excusable to satisfy the cause requirement." Id.

Under Reed, Mr. Rose has shown cause for failing to assert a vagueness challenge to the ACCA's residual clause on direct appeal. At the time of Mr. Rose's 2009 direct appeal, the Supreme Court had already rejected a vagueness challenge to the ACCA's residual clause in James v. United States, 550 U.S. 192, 127 S. Ct. 1586 (2007). In 2011, two months after Mr. Rose filed his § 2255 motion, the Supreme Court reaffirmed James in Sykes v. United States, 564 U.S. 1,

---

[5] Reed addressed the "specific situation . . . in which [the Supreme] Court has articulated a constitutional principle that had not been previously recognized but which is held to have retroactive application." Id. at 17, 104 S. Ct. at 2911.

131 S. Ct. 2267 (2011).  In 2013, while Mr. Rose's § 2255 motion was still pending, this Court, based on James and Sykes, also rejected a vagueness challenge to the ACCA's residual clause.  See United States v. Gandy, 710 F.3d 1234, 1239 (11th Cir. 2013).

In 2015, the Supreme Court in Johnson invalidated the residual clause as unconstitutionally vague.  In doing so, the Supreme Court recognized it previously had "rejected suggestions by dissenting Justices that the residual clause violates the Constitution's prohibition of vague criminal laws" in James and Sykes and declared "[o]ur contrary holdings in James and Sykes are overruled."  Johnson, 135 S. Ct. at 2556, 2563.  Finally, the rule in Johnson was later "given retroactive application" to cases on collateral review.  See Welch, 136 S. Ct. at 1268.

Given the foregoing, Mr. Rose's case falls within the first situation identified in Reed: when the Supreme Court ultimately invalidated the residual clause as unconstitutionally vague in Johnson in 2015, it "explicitly overrule[d]" two of its own precedents on the exact same issue.  Reed, 468 U.S. at 17, 104 S. Ct. at 2911.  Thus, "[b]y definition," Mr. Rose did not have a "reasonable basis" upon which to raise a vagueness challenge to the residual clause when he filed his direct appeal in 2009.  See id.  And as a result, his failure to do so "is sufficiently excusable to satisfy the cause requirement."  See id.

21

The government relies on Bousley v. United States, 523 U.S. 614, 118 S. Ct. 1604 (1998), to argue that Mr. Rose did not have cause for failing to raise the vagueness challenge on direct appeal. However, Bousley is not on point because it did not involve a holding that "explicitly overrule[d]" Supreme Court precedent. Reed, 468 U.S. at 17, 104 S. Ct. at 2911.

In Bousley, a § 2255 petitioner asserted he had cause for failing to raise a particular argument—that the government must show "active employment of [a] firearm" in order to prove "use" of a firearm under 18 U.S.C. § 924(c)—four years before the Supreme Court adopted that rule in Bailey v. United States, 516 U.S. 137, 144, 116 S. Ct. 501, 506 (1995). Bousley, 523 U.S. at 617, 622–23, 118 S. Ct. at 1608, 1611 (quotation omitted). Before Bailey, the Supreme Court had never construed the word "use" within the meaning of § 924(c), and the circuits were split on the issue. Bailey, 516 U.S. at 142, 116 S. Ct. at 505. Relying on Reed, the petitioner in Bousley argued that the rule the Supreme Court eventually adopted in Bailey was so novel that "the legal basis for [that] claim was not reasonably available" at the time of his procedural default. Id. at 622, 118 S. Ct. at 1611 (quotation omitted). He also said he satisfied the cause requirement because any attempt to assert that claim would have been futile. Id. at 623, 118 S. Ct. at 1611. In rejecting the petitioner's position, the Supreme Court remarked that the position it adopted in Bailey "was most surely not a novel one" because "at the

22

time of petitioner's plea, the Federal Reporters were replete with cases" raising the same argument. Id. at 622, 118 S. Ct. at 1611. The Court also rejected the petitioner's futility assertion by noting that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Id. at 623, 118 S. Ct. at 1611 (quotation marks omitted).

But the Supreme Court's reasons for rejecting the petitioner's argument for cause in Bousley do not apply here. A vagueness challenge to the ACCA's residual clause at the time of Mr. Rose's direct appeal would have been foreclosed by binding Supreme Court law and not "simply . . . unacceptable to [some] particular court" as was the case in Bousley. Id. Before Bailey, the circuits were split on whether "use" of a firearm under § 924(c) meant something more than mere possession of a firearm, and the Supreme Court had never addressed the issue. See Bailey, 516 U.S. at 142, 116 S. Ct. at 505. Thus, at the time of the Bousley petitioner's direct appeal, an argument in line with the rule announced in Bailey might have been futile in the petitioner's circuit, but it was not foreclosed in other circuits. In contrast, when Mr. Rose appealed his sentence, a claim challenging the ACCA's residual clause as unconstitutionally vague would have been completely foreclosed in all courts because the Supreme Court in James had expressly upheld the residual clause against a vagueness challenge less than two years before Mr. Rose's direct appeal.

23

The government says the argument that the ACCA's residual clause is unconstitutionally vague was not sufficiently "novel" to support cause under Reed because at the time of Mr. Rose's direct appeal "the Federal Reporters were replete with cases" raising that argument, which Bousley said cut against a showing of cause.  523 U.S. at 622, 118 S. Ct. at 1611.  However, the government overlooks the fact that Reed and Bousley addressed vastly different circumstances.  In Reed, the Supreme Court plainly and unequivocally said that a constitutional argument is sufficiently "novel" to satisfy the cause requirement if the Court (1) "explicitly overrule[s] one of [its] precedents" in announcing a rule adopting that argument; and (2) makes the rule retroactive on collateral review. 468 U.S. at 17, 104 S. Ct. at 2911.  In Bousley, the Supreme Court faced an altogether different set of circumstances: before its decision in Bailey, none of its precedents specifically addressed the statutory interpretation issue in question and the circuits were not in unanimous or even near-unanimous agreement on that issue.  See Bailey, 516 U.S. at 142, 116 S. Ct. at 505.  Thus, Bousley stands for the proposition that a claim is not "novel" if (1) the Supreme Court has never decided it; (2) it has been raised frequently in the lower courts; and (3) the circuits are not in substantial agreement about the issue that it addresses.[6]  Bousley therefore does not bar Mr. Rose's

---

[6] Significantly, the Bousley decision mentions Reed once and does not even hint at overruling or modifying Reed's framework.  Bousley, 523 U.S. at 622, 118 S. Ct. at 1611.  The government would have us look to whether an argument was frequently raised in the lower

24

vagueness challenge from being sufficiently novel to support cause because (1) the

Supreme Court had decided and rejected that challenge in James less than two

years before Mr. Rose's direct appeal (and did so again in Sykes); and (2) because

of James and Sykes, the circuits were in complete agreement on the issue as well.

In contrast, Reed clearly applies to this case because Johnson, in announcing a new

retroactively-applicable rule of constitutional law, explicitly overruled James and

Sykes.  See Reed, 468 U.S. at 17, 104 S. Ct. at 2911.  As a result, Reed dictates

that Mr. Rose had cause for failing to assert such a vagueness challenge to the

residual clause on direct appeal.[7]

---

courts to determine whether that argument was "novel" even if the Supreme Court had rejected it at the time and only later expressly reversed its position.  Implicit in that analysis is the assumption that Bousley effected a sub silentio repudiation of Reed.  However, in the absence of a clearer statement from the Supreme Court on the status of Reed, we reject that assumption and apply Reed on its terms.  See Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S. Ct. 1917, 1921–22 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); cf. Eng'g Contractors Ass'n of S. Fla. v. Metro. Dade Cty., 122 F.3d 895, 908 (11th Cir. 1997) ("[W]e are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court." (quotation omitted)).

[7] The government's argument based on Apprendi fails for similar reasons.  Apprendi held that any fact that increases a defendant's sentence beyond the statutory maximum (besides a prior conviction) must be found by a jury beyond a reasonable doubt.  Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000).  The government says that after Apprendi was decided, the courts of appeals rejected attempts by federal prisoners to invoke Apprendi in their § 2255 proceedings even though they had failed to raise Apprendi-type objections at sentencing or on direct appeal, in large part because other defendants had been raising similar challenges well before Apprendi was decided.  See, e.g., McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001) ("[A]s the other circuits to address this issue have noted, the foundation for Apprendi was laid years before the Supreme Court announced Apprendi.").

**E.    Actual Prejudice Also Required to Excuse Procedural Default**

Once a petitioner shows cause for failing to assert a claim on direct appeal, he must also show actual prejudice in order to excuse the procedural default. See Ward v. Hall, 592 F.3d 1144, 1178–79 (11th Cir. 2010). To demonstrate actual prejudice, a petitioner must show "more than just the possibility of prejudice; it requires that the error 'work to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. (quoting in part United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982))

Mr. Rose says that because his 2000 Florida conviction for aggravated battery on a pregnant woman can no longer serve as an ACCA predicate under the residual clause in light of Johnson, the District Court's decision to lengthen his sentence pursuant to the ACCA is error. Mr. Rose argues that the maximum sentence he could have received for his § 922(g)(1) conviction, absent the ACCA enhancement, was 120 months. See 18 U.S.C. § 924(a)(2). Mr. Rose claims that the alleged ACCA error in his sentence "worked to his actual and substantial disadvantage." Frady, 456 U.S. at 170, 102 S. Ct. at 1596; see Glover v. United States, 531 U.S. 198, 200, 121 S. Ct. 696, 698 (2001) (holding an error that

---

But unlike Johnson, Apprendi did not explicitly overrule prior Supreme Court precedent in reaching its holding. Further, and again unlike Johnson, Apprendi's rule was not retroactively applicable to cases on collateral review. Id. Because the Supreme Court explicitly overruled itself when it announced its new rule in Johnson, and because that rule is retroactively applicable, Reed is squarely on point and mandates the conclusion that Mr. Rose had cause for failing to assert a vagueness challenge to the ACCA's residual clause on direct appeal—no matter how many other defendants may have raised that argument at the time.

26

increased a petitioner's sentence "by at least 6 months and perhaps by 21 months" amounted to prejudice).

However, whether Mr. Rose was actually prejudiced turns on questions of historical fact, which have never been addressed by the District Court. First is the question of whether Mr. Rose can establish that his sentence in 2009 was based on the residual clause. While Mr. Rose's remanded claim was pending before this Court, we decided Beeman v. United States, 871 F.3d 1215 (11th Cir. 2017). In Beeman, we held that "[t]o prove a Johnson claim, a movant must establish that his sentence enhancement turned on the validity of the residual clause." Id. at 1221 (internal quotation marks and brackets omitted). "In other words, he must show that the [residual] clause actually adversely affected the sentence he received." Id. "Only if the movant would not have been sentenced as an armed career criminal absent the existence of the residual clause is there a Johnson violation." Id. In Beeman, we held "that, like any other § 2255 movant, a Johnson § 2255 claimant must prove his claim," and "[t]o prove a Johnson claim, the movant must show that—more likely than not—it was use of the residual clause that led to the sentencing court's enhancement of his sentence." Id. at 1221–22 (footnote omitted).

Further, this Court made clear in Beeman that this is a question of "historical fact." Id. at 1224 n.5. As in Beeman, what we must determine is this historical

27

fact: was Mr. Rose in 2009 sentenced solely per the residual clause?  See id. (stating "[w]hat we must determine is a historical fact: was Beeman in 2009 sentenced solely per the residual clause?").  Because of the procedural posture of this case and Mr. Rose's Johnson claim being raised only at the Supreme Court level, the District Court has not had an opportunity to decide this first question of historical fact, and neither side has had a chance to introduce evidence addressing this issue.[8]  Nor did either side address this point in the limited briefing before this Court.

Second is the question of whether Mr. Rose can establish that the sentencing court in 2009 did not "also or solely" rely on the elements clause.  See id. at 1221 (explaining that to prove a Johnson claim, the § 2255 movant must show that the sentencing court did not "also or solely rel[y] on either the enumerated offenses clause or elements clause").  In this regard, we note that the District Court's 2013 denial of Mr. Rose's § 2255 motion concluded that his aggravated battery conviction still qualified after the Curtis Johnson decision, which was an elements

---

[8] In Beeman, the defendant did not request an evidentiary hearing in the District Court and did not suggest in this Court that he wanted a remand.  Instead, the defendant in Beeman proceeded on the record as it existed and conceded that there was nothing in the record suggesting that the District Court relied on only the residual clause in sentencing him.  Id. at 1224.

28

clause case. Even so, the District Court has never had the chance to decide this question of historical fact as to the elements clause.[9]

Third, there is also the question of the import of Mr. Rose's 1976 Pennsylvania robbery conviction. The government argues that this conviction constitutes the third predicate necessary to support his ACCA enhancement.[10] But the District Court never had a chance to address whether this conviction qualifies as an ACCA predicate and so, again, we decline to address this issue in the first instance. For all of these reasons, we remand this case to the District Court.

---

[9] After our 2014 Rose II decision in this same appeal, this Court held that a conviction for aggravated battery on a pregnant woman under § 784.045(1)(b) does not qualify as a violent felony under the elements clause of the ACCA. See United States v. Braun, 801 F.3d 1301, 1303–04 (11th Cir. 2015). As to the elements clause, the government claims that Mr. Rose did not raise an elements-clause challenge on direct appeal; thus, he has procedurally defaulted any elements-clause claim and has not shown cause to excuse that default. See Rose II, 590 F. App'x at 939. Again, this is an issue for the district court to address in the first instance.

In any event, the fact that this Court in 2015 held that a battery on a pregnant woman conviction no longer qualifies under the elements clause is a decision that casts no light on the historical fact here: whether in 2009 Mr. Rose was in fact sentenced only under the residual clause or also or solely under the elements clause.

[10] To the extent Mr. Rose's 2016 supplemental brief now claims that his other two convictions (1976 federal bank robbery/aggravated assault and 1985 Florida robbery) do not count as violent felonies under the elements clause of the ACCA, Mr. Rose has procedurally defaulted those claims. In any event, under our precedent, these convictions still qualify as violent felonies under the ACCA's elements clause. A Florida robbery qualifies as an ACCA predicate. See United States v. Fritts, 841 F.3d 937, 943-44 (11th Cir. 2016), cert. denied, ___ U.S. ___, 137 S. Ct. 2264 (2017); United States v. Dowd, 451 F.3d 1244, 1255 (11th Cir. 2006). Mr. Rose's convictions for a federal bank robbery and aggravated assault with a deadly weapon during that robbery under 18 U.S.C. § 2113(a) and (d) also qualify as a violent felony. See In re Sams, 830 F.3d 1234, 1239 (11th Cir. 2016) (holding that bank robbery under § 2113(a) is a crime of violence under the nearly identical elements clause of § 924(c)(3)(A)); In re Hines, 824 F.3d 1334, 1337 (11th Cir. 2016) (holding an armed bank robbery under § 2113(a) and (d) qualifies under § 924(c)(3)(A)). Mr. Rose recognizes our precedent but states that he raises these issues to preserve them for further review.

29

**F.     Scope of Remand**

We must address one final argument to clarify the scope of our remand.  Mr. Rose argues: (1) that at sentencing the government never relied upon (or even mentioned) Mr. Rose's 1976 Pennsylvania robbery conviction to support his ACCA enhancement; and (2) thus, the government should now be prohibited from using that Pennsylvania robbery conviction to justify Mr. Rose's ACCA sentence. Rose argues that two decisions support his prohibition argument: (1) Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253 (11th Cir. 2013), overruled in part by McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076 (11th Cir. 2017) (en banc); and (2) United States v. Canty, 570 F.3d 1251, 1257 (11th Cir. 2009).

For the reasons explained below, we disagree with Mr. Rose.  The government has not waived and is not prohibited from now relying on his other felony convictions—such as Mr. Rose's 1976 Pennsylvania robbery conviction— as the third ACCA predicate.  See United States v. Martinez, 606 F.3d 1303 (11th Cir. 2010).  First, "the controlling statute, 28 U.S.C. § 2106, unambiguously grants the circuit courts broad discretion to fashion an appropriate mandate on remand after the vacatur of a sentence."  Id. at 1304 (explaining that "a reviewing panel may remand for limited purposes, for broader purposes, or to permit further evidence to be presented on the second round even when a party has been given an

30

opportunity but fails to do so on the first round"). Second, "there is binding precedent in this Circuit (predating Canty) where we have squarely permitted the government to present evidence at resentencing even though it amounted to giving the party 'a second bite at the apple.'" Id. at 1304–05.

Third, it is true "the reviewing court remains free to modify or limit the issues for review on remand as it may deem appropriate; indeed, it may require such further proceedings 'as may be just under the circumstances.'" Id. at 1304 (quoting 28 U.S.C. § 2106). In fact, the cases Mr. Rose cites are examples of the reviewing court exercising its discretion under the particular facts of that case to limit review on remand. As pointed out in Martinez,

> Canty does not hold (nor could it) that an appellate panel was barred from fashioning an appropriate mandate, including allowing the government to present additional evidence on remand for resentencing. We read it to say only that a broad mandate for de novo resentencing was in appropriate in that case. Under 29 U.S.C. § 2106, the panel was free to limit the remand proceedings as it thought "just." Because the government in Canty had explicitly disclaimed reliance on other evidence at the first sentencing, there were sound reasons to deny them a "second bite at the apple."

Id. at 1305 (quoting in part Canty, 570 F.3d at 1256–670).[11]

---

[11] Mr. Rose cites United States v. Petite, but it has at best some dicta. 703 F.3d 1290, (11th Cir. 2013). In Petite, the Court concluded the vehicle flight offense counted as an ACCA predicate and thus the Court said it need not reach the government's claim that they could substitute a different conviction. 703 F.3d at 1292 n.2. The Court's statements in a footnote in Petite that the government on appeal cannot offer a new predicate conviction in support of an ACCA enhancement are pure dicta. In any event, the defendant in Petite had objected at sentencing and on direct appeal that the vehicle flight offense did not count substantively under the residual clause, which materially distinguishes Petite from this case. See id. at 1292.

31

Fourth, in this case there are powerful reasons to allow the government on remand to present additional evidence of other convictions. One alone suffices. Mr. Rose never raised at sentencing or on direct appeal either of the two claims here, to wit: that his aggravated battery conviction was on a pregnant woman and thus did not involve sufficient violent force to qualify under the elements clause or that the residual clause was void for vagueness. If as to procedural default Mr. Rose had no way to anticipate Johnson's invalidation of the residual clause in the ACCA, then the government equally did not either.[12] The government was not required to put in exhibits of all of a defendant's violent felony convictions in anticipation of Johnson.

## VI.  CONCLUSION

As to Mr. Rose's 2015 Johnson-residual clause claim, he has established cause to excuse his procedural default , but it remains to be seen whether he can show actual prejudice. To resolve the issue of actual prejudice, we would have to decide several issues never addressed by the District Court. Accordingly, we vacate the District Court's denial of Mr. Rose's § 2255 motion so that the District Court can address these issues in the first instance.

---

[12] It's on this basis that Bryant is distinguishable. Unlike Rose's Johnson claim, Bryant's Begay claim was not based on a Supreme Court decision which "disapprove[d] a practice [it] arguably ha[d] sanctioned in prior cases." See Reed, 468 U.S. at 16–17, 104 S. Ct. at 2910–11. Because the claim in Bryant did not meet the Reed standard for novelty, Bryant is simply not applicable here.

Finally, Mr. Rose has not shown any error in our <u>Rose II</u> opinion and so we hereby reinstate that opinion, but only as to the issues decided in <u>Rose II</u>.[13]

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

---

[13]The Court on its own motion, for good cause and to expedite the case, suspends the rule regarding oral argument where the decision is not unanimous.  <u>See</u> 11th Cir. R. 2-1.  The Court denies the May 11, 2018 Motion to Expedite as moot.

MARTIN, J., concurring in part and dissenting in part.

I agree with the majority's holding that Mr. Rose can show cause to overcome procedurally defaulting his § 2255 claim. Maj. Op. at 25. Under this Circuit's precedent, that means we are required to remand this case to the District Court, so that Mr. Rose can attempt to show it was more likely than not "he in fact was sentenced as an armed career criminal under the residual clause." Beeman v. United States, 871 F.3d 1215, 1225 (11th Cir. 2017).

Beeman correctly states that § 2255 petitioners bear the burden of proving their claims. See id. at 1223. But Beeman also says that petitioners cannot show they were sentenced under the residual clause based on precedent holding that one of their ACCA predicates does not qualify under the elements clause. See Beeman, 871 F.3d at 1224 & n.5. In this regard, our precedent places more of a burden on the petitioner than the statute requires. I therefore reject the conclusion of the majority opinion that Mr. Rose is not allowed to rely on United States v. Braun, 801 F.3d 1301, 1303–04 (11th Cir. 2015) to prove that his sentence was based solely on the residual clause. See Maj. Op. at 29 n.9. In Braun, we held that Florida aggravated battery on a pregnant woman, one of the prior convictions used to support Mr. Rose's ACCA sentence, cannot serve as an ACCA predicate under the elements clause. Braun, 801 F.3d at 1303–04. In my view, Mr. Rose should

34

be allowed to rely on Braun to "prove that but for the residual clause [he] would have received a different sentence." Beeman, 871 F.3d at 1225.

I also reject the holding of the majority opinion, which permits the government to raise Mr. Rose's 1976 Pennsylvania robbery conviction on remand. The government never relied upon (or even mentioned) that conviction to support his ACCA enhancement at sentencing. I would bar the government, in the same way we bar criminal defendants, from raising a new argument at Mr. Rose's resentencing that it chose not to make at his original sentencing. This Circuit originally applied the same rule to both parties in a sentencing in this way. See Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253, 1279 (11th Cir. 2013), overruled in part by McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076 (11th Cir. 2017) (en banc). Because, at Mr. Bryant's original sentencing, the government did not argue that his earlier burglary conviction could be used as an ACCA predicate, it had waived its ability to rely on that burglary conviction at Mr. Bryant's resentencing. Id. My view is that we should continue this practice here and deny the government's request to raise Mr. Rose's Pennsylvania robbery conviction as an ACCA predicate at his resentencing.

Finally, even if the government is permitted to raise Mr. Rose's 1976 Pennsylvania robbery conviction on remand, that conviction is likely to prove irrelevant. Because the government never argued the 1976 Pennsylvania

35

conviction was a basis for Mr. Rose's ACCA-enhanced sentence, that conviction

bears no relation to whether his sentence was, as a historical fact, based on the

residual clause.  See Beeman, 871 F.3d at 1224 n.5.